**In the Matter of the EXTRADITION Of Georgios KOSKOTAS.**

**Magistrate No. 88–73–J.**

United States District Court, D. Massachusetts.

July 13, 1989.

Victor A. Wild, Asst. U.S. Atty., Dept. of Justice, Boston, Mass., for the Government.

Ronald S. Liebman, Patton, Boggs & Blow, Washington, D.C., for defendant.

ORDER

ON

KOSKOTAS' MOTION TO STAY PROCEEDINGS # 20,

MOTION FOR DISCOVERY # 23,

MOTION FOR ISSUANCE OF LETTER ROGATORY # 22,

MOTION TO DISMISS # 27,

RENEWED MOTION FOR BAIL # 21

JOYCE LONDON ALEXANDER,
United States Magistrate.

The above-entitled motions arise from an action concerning the extradition of Georgios V. Koskotas ("Koskotas") from the United States of America to the Hellenic Republic of Greece. Koskotas arrived from Brazil at Hanscom Field, New Bedford, Massachusetts, on November 23, 1988. He was met there by FBI agents who remained with him in his hotel room until the following morning. On November 24, 1988, Koskotas was formally arrested and on November 25, 1988, appeared before this Court.

Koskotas is charged with the crimes of Illicit Appropriation (embezzlement) committed against the Bank of Crete as stated in arrest warrant No. 10/7/11/1988, which warrant was duly issued by the Athens Court of First Instance, 8th Special Inquiry Section, Judicial Docket No. A88/3798a, on November 7, 1988 in Athens, Greece. The crime of Illicit Appropriation is in violation of Article 375, §§ 1 and 2, in conjunction with Article 1 of Law 1608/1950 as replaced by Article 4 of Law 1738/87 of the Hellenic Republic of Greece Criminal Code.

On November 14, 1988 the Athens Court issued a second arrest warrant No. 11/14/11–1988, Judicial Docket No. B88/3612a, charging Koskotas with Illicit Appropriation (embezzlement) committed against the Bank of Crete and Forgery Accompanied By Use, all in violation of Articles 1, 26, 27, 45, 94 § 1, 98, 375 §§ 1 and 2, and Article 216 §§ 1 and 3 of the Hellenic Republic of Greece Criminal Code in conjunction with Articles 1 and 2 of Law 1608/1950 as replaced by paragraphs 4 and 5 of Article 4 of Law 1738/87.

On November 25, 1988, this Court issued an Order that Koskotas be detained without bail pending further hearing on extradition pursuant to 18 U.S.C. § 3184.

On December 8, 1988, the Athens Court of Appeal issued an arrest warrant No. 1/1988 Ref. No. 19 for the apprehension of Georgios V. Koskotas charging him with the crime of Forgery and Use of Forged Documents in violation of Article 26 § 1a, 27 § 1, 51, 53 and 216 §§ 1 and 3 of the Hellenic Republic of Greece Criminal Code. The warrant also charges Koskotas with Aggravated Defamation punishable by Articles 26 § 1a, 27 § 1, 51, 53, 94 § 1, and Article 363 in conjunction with Article 362 of the Hellenic Republic of Greece Criminal Code.

On December 8, 1988, the Athens Court of Appeals issued the fourth arrest warrant, No. 2/1988 Ref. No. 20 for the apprehension and extradition of Koskotas. This warrant charges him with Illicit Appropriation in violation of Articles 26 § 1, 27 § 1, 45, 98, 375 §§ 1, 2 of the Hellenic Republic of Greece Criminal Code in conjunction with Articles 263a of the same code and Article 1 § 1 of Law 1608/1950 as replaced with Article 4 § 4 of Law 1738/1987, and

with Execution of Forged Documents in violation of Articles 26 § 1, 27 § 1, 45, 98 and Article 216 §§ 1 and 3 of the Hellenic Republic of Greece Criminal Code in conjunction with Articles 1 § 1 of Law 1608/1950 and 263a as these latter Articles were replaced with Article 4 §§ 5 and 4 of Law 1738/1987.

Koskotas is also charged in the fourth warrant with the crime of Obtaining by Fraud a False Certificate, to wit a travelling document, from the Greek Embassy, Washington, D.C., all in violation of Articles 5, 6 § 1, 26 § 1a, 27 § 1, 51, 63 and Article 220 § 1, in conjunction with Article 13a of the Hellenic Republic of Greece Criminal Code.

On January 20, 1989, Request for Extradition of Koskotas was filed in this Court. This filing was within the provisions of Article XI of the Extradition Treaty between the United States of America and Greece. Article XI establishes a two calendar-month time limit between the date of the provisional arrest (date of commitment) on November 24, 1988, and the date when the Secretary of State of the United States (via the American Embassy in Greece) received a formal request for extradition of Koskotas. Also, on January 20, 1989, the United States Attorney filed with this Court evidentiary documents in support of his motion for extradition.

After several continuances requested by the parties, on June 16, 1989, this Court held a hearing on the instant motions.

## 1. RENEWED MOTION TO GRANT BAIL

By the instant motion, Koskotas moves this Court to reconsider its November 29, 1988 Order denying bail, and to grant him bail and release him from prison pending the completion of extradition proceedings. The government opposes the motion.

Koskotas asserts the following "special circumstances" justify the granting of his bail request:

1. his need to assist counsel in preparation for this case;
2. his need to defend himself against pending civil litigation; and

3. his assertion that he presents no significant risk of flight.

Koskotas contends that where these "special circumstances" exist, the presumption against bail should be modified to permit the granting of bail.

■ In extradition proceedings, "[t]he ordinary technicalities of criminal proceedings are applicable to [extradition] proceedings ... only to a limited extent." *Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903). Further, as a fugitive from the justice of another country, Koskotas has a heavy burden to meet in establishing "special circumstances" which must be present to overcome the strong presumption against bail in extradition cases. *Beaulieu v. Hartigan*, 554 F.2d 1, 1–2 (1st Cir.1977). While "special circumstances" have not been clearly defined, case law has limited the exception to "the most pressing circumstances and when the requirements of justice are absolutely peremptory." *United States v. Williams*, 611 F.2d 914, 915 (1st Cir.1979) quoting *In re Mitchell*, 171 F. 289, 290 (S.D.N.Y.1909).

It is clear that one of the basic questions facing the court is whether, under all the circumstances, the petitioner is likely to appear before the Court when required to do so. In *Beaulieu v. Hartigan*, 430 F.Supp. 915, 917 (D.C.Mass.1977), *vacated*, 554 F.2d 1 (1st Cir.1977). Judge Tauro stated the nature of the inquiry:

> Fundamentally, it is a judgment call by the District Court based on the totality of the circumstances, including the extremely important consideration of this country's treaty agreements with other nations. A district judge should approach the bail situation in an extradition case with an added degree of caution, given the additional factor of an international treaty.

*Id.* at 917. In fact, because of treaty obligations, admission to bail "should be in practice an unusual and extraordinary thing," *United States ex. rel. McNamara v. Henkel*, 46 F.2d 84 (S.D.N.Y.1912) and courts should "exercise the power very sparingly and only when the justification is

pressing as well as plain." *In re Klein*, 46 F.2d 85 (S.D.N.Y.1930).

■ As to circumstances a and c, cited by Koskotas as "special circumstances" justifying his release on bail, this Court has previously fully and clearly discussed them in its Order of November 29, 1988, and found them to be unpersuasive. Koskotas' claim that he needs to be released in order for him to assist defense counsel in the preparation of his defense to extradition is not unique. In fact, it could apply to any extraditee awaiting a hearing. Moreover, in its Order of November 29, 1988, this Court also found that Koskotas is a serious risk of flight. Koskotas' renewed motion for bail fails to demonstrate otherwise.

Koskotas seeks to be released on a third ground (b). Koskotas is currently a defendant in a civil suit which was brought in the Southern District of New York. He claims that he must proceed *pro se* and thus needs to be released so that he may defend himself in that civil suit.[1] In support, Koskotas relies on the case of *In re Mitchell, supra*. In *Mitchell*, the court released petitioner pending his extradition hearing because he was arrested on the day before his civil trial was to begin and the action was one involving a very large sum of money—petitioner's "whole fortune." *Id.* at 290.

In the more recent case of *In re Extradition of Russell*, 647 F.Supp. 1044 (S.D.Tex. 1986), *aff'd*, 805 F.2d 1215 (5th Cir.1986), the Court distinguished *Mitchell* as follows:

> the fact that Petitioner is currently involved in pending civil litigation relating to the extradition proceedings is not a special circumstance under the circumstances of the matter at hand. This is not a situation where, as was true in *In re Mitchell, supra*, Petitioner faces being arrested on the eve of a complex civil trial upon which his whole fortune depends. Ample time remains for Petitioner to consult with his attorneys as to that pending litigation.

*Id.* at 1049. The instant case is distinguishable from *Mitchell* on precisely the same grounds. Unlike the petitioner in *Mitchell, supra*, Koskotas' civil action has not yet reached the trial stage. Indeed, this very complex case was filed only one year ago. Additionally, it was undisputed that Koskotas does not face the prospect of a civil trial in the near future.

Koskotas also cites the case of *Beaulieu, supra*, in support of his position. However, this case is also easily distinguished on its facts. In *Beaulieu*, upon reconsideration, the district judge granted bail to petitioner pending his extradition hearing based upon a finding that "special circumstances" existed. In that case, the Court held that where defendant had been confined for more than two months without a finding on the fundamental issue of identification, bail was appropriate. Additionally, the Court stated that petitioner was a good bail risk given the facts that he had no funds and no passport.

In the instant case, no issue of identification exists. Most importantly, however, this Court does not find Koskotas to be even an arguably tolerable bail risk.

Accordingly, Koskotas' renewed motion for bail is hereby denied.

## 2. MOTION TO DISMISS

By the instant motion, Koskotas seeks dismissal of the extradition proceeding on several grounds:

1. The charges against Koskotas are "of a Political Character" within the meaning of the Treaty.
2. The motives of the Greek Government in seeking Koskotas' extradition, and the likely outcome should he be extradited to Greece, are antipathetic to a federal court's sense of decency.
3. In several cases, there is insufficient evidence to show commission of an act which is 1) an enumerated offense under the Treaty, or 2) punishable under Greece's own criminal law.

---

[1] At the hearing, the government reiterated that both his counsel in these proceedings and two other law firms are representing Koskotas on particular aspects of that case. Defense counsel stated that these firms had filed only special appearances on behalf of Koskotas.

4. These extradition proceedings should not go forward given the procedural irregularities that have occurred.

This Court will examine each of these grounds *in seriatim.*

### Political Character of Offense

Koskotas claims that his alleged offenses are "of a political character" under the treaty and are therefore not extraditable. In that regard, Koskotas asserts that "the nature of the alleged crime, the acts of the PASOK government in connection therewith, the violent acts of terrorist groups in response, and the general political uprising that has occurred all demonstrate the political character of these crimes." (Koskotas' Brief in Opposition to Extradition, pp. 6–7). More specifically, Koskotas contends that the PASOK government has "engaged in a form of constitutional revolt by appropriating public assets to the party ... by usurping power over the judiciary, by gathering up control of press institutions ..." *Id.* at p. 42. Further, Koskotas maintains that a second "uprising" has also been occurring in the form of terrorist groups seeking to undermine the government generally. Koskotas states that the so-called "Koskotas Affair" is at the center of the uprising and claims that his alleged crimes are tied to the political conflict at hand. *Id.* at 39–46.

The government, on the other hand, contends that even assuming *arguendo* that Koskotas' assertions are all true, they are insufficient to invoke the political offense exception.

Article III of the Extradition Treaty between the United States and Greece sets forth the political offense exception to extradition.[2] Under this exception, an extraditee as to whom probable cause has been shown may avoid extradition if, and only if, he shows that the crimes which he has committed are "crime[s] or offense[s] of a political character."

■ In the case of *Quinn v. Robinson*, 783 F.2d 776, 808 (9th Cir.1986), *cert. denied*, 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986), the Court stated that the political offense exception "was designed to protect those seeking to change their own government or to oust an occupying power that is asserting sovereignty over them." In order to invoke the political offense exception, a petitioner must show: 1) that there was a violent political uprising or other violent political disturbance at the time of the charged offense, and 2) a charged offense that is "incidental to", "in the course of", or "in furtherance of" the uprising. *Id.* at 797. Further, "the act must be *causally* and *ideologically* related to the uprising." (emphasis added). *Id.* at 809; *Ornelas v. Ruiz*, 161 U.S. 502, 16 S.Ct. 689, 40 L.Ed. 787 (1896) (where the Supreme Court held that the political exception did not apply because the offenses charged did not constitute "a movement in the aid of a political revolt, an insurrection or a civil war" and the petitioners were not engaged in armed combat when the alleged crimes were committed); *In re Mackin*, 80 Cr.Misc. 1, (S.D.N.Y.1981), *appeal dismissed*, 668 F.2d 122 (2d Cir.1981) (where the court denied England's request for extradition of an IRA organizer based on a showing that a continuous uprising spanning at least a decade and accompanied by severe levels of violence throughout the country had been occurring); *Ramos v. Diaz*, 179 F.Supp. 459 (S.D.Fla.1959) (where defendants were members of an

**2.** The Treaty provides as follows:

The provisions of the present Treaty shall not import a claim of extradition for any crime or offense of a political character, nor for acts connected with such crimes or offenses; and no person surrendered by or to either of the High Contracting Parties in virtue of this Treaty shall be tried or punished for a political crime or offense committed before his extradition. The State applied to, or courts of such State, shall decide whether the crime or offense is of a political character. When the offense charged comprises the act either of murder or assassination or of poisoning, either consummated or attempted, the fact that the offense was committed or attempted against the life of the Sovereign or head of a foreign State, or against the life of any member of his family, shall not be deemed sufficient to sustain that such crime or offense was of a political character; or was an act connected with crimes or offenses of a political character.

organized revolutionary army engaged in an armed conflict for political power within the requesting country, the first prong of the incidence test was met).

In the few cases where United States Courts have denied extradition under the political offense exception, the petitioner has demonstrated circumstances involving an actual violent uprising, where the victim of the crime was a combatant. *See e.g., In re Doherty,* 599 F.Supp. 270 (S.D.N.Y. 1984), *aff'd,* 786 F.2d 491 (2d Cir.1986); *In re Ezeta,* 62 F. 972 (N.D.Cal.1894).

In addition, courts have uniformly rejected the application of the political offense exception to financial types of offenses where there was no evidence that the financial crimes were committed in the course of and incidental to a revolutionary uprising or other violent political disturbance. *See Jimenez v. Aristequieta,* 311 F.2d 547, 560 (5th Cir.1962), *cert. denied,* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963) (where the Fifth Circuit rejected the claim that financial crimes could be injected with a political purpose in order to bar extradition under the Venezuelan treaty). The Second Circuit, in *Jhirad v. Ferrandina,* 536 F.2d 478 (2d Cir.1976), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976), also rejected petitioner's contention that a public official who embezzled money was protected by the political offense exception under India's treaty. In *Garcia–Guillern v. United States,* 450 F.2d 1189 (5th Cir. 1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972), the Fifth Circuit again held that charges of embezzlement by a public official were not within the political offense exception because there was no "uprising" or some other violent political disturbance incidental to the commission of the crime. Further, the Fifth Circuit stated that in order to determine the status of the offense committed (whether it is a political offense or not) a court must analyze the circumstances attending the alleged crime at the time of its commission and not the motives of those who subsequently handle the prosecution. *Id.* at 1192, citing *Ramos, supra.*

More recently, in *Sindona v. Grant,* 619 F.2d 167 (2d Cir.1980), 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 the Second Circuit refused to accept petitioner's contention that the charges of fraudulent bankruptcy fell within the political offense exception under the Italian treaty.[3] The *Sindona* Court interpreted the treaty language as follows:

> Recognizing that the change [sic] of fraudulent bankruptcy is not political on its face, Sindona nonetheless urges that it has a "political character" for purposes of Article VI(5) as a whole because it resulted from political reasons. We disagree. The controlling language in both clauses of Article VI(5) is "offense of a political character" ... American courts have uniformly construed "political offense" to mean those that are incidental to severe political disturbances such as war, revolution and rebellion.... The offenses charged against Sindona are clearly non-political in this sense, and it would remain so even if the recognized definition were to be broadened to include offenses accompanying political disturbances of a less violent character than those named above.

619 F.2d at 173.

However, this Court rejects the notion that the scope of the political offense exception is strictly limited to the traditional definition of overt military actions. In that regard, the Court, in *In re Doherty, supra* at 275, noted that

> [t]he lessons of recent history demonstrate that political struggles have been commenced and effectively carried out by armed guerrillas long before they were able to mount armies in the field ... Nor is the fact that violence is used in itself dispositive. Instead, the court must assess the nature of the act, the context in which it is committed, the status of the party committing the act, the nature of the organization on whose behalf it is committed, and the particular-

---

**3.** The language in the Italian treaty concerning "offense of a political character" is identical to that contained in the Greek treaty.

ized circumstances of the place where the act takes place.

██ In considering the offenses for which extradition is sought, in the case *sub judice,* and in light of these principles, this Court is compelled to conclude that the political offense exception does not encompass these offenses.

First, Koskotas has not produced any factual basis establishing that the alleged "conflict" in Greece even approaches the type of violent political "uprising", "rebellion", or "revolution" required to establish the applicability of the exception.[4] *See Quinn, supra* at 806; *Eain v. Wilkes,* 641 F.2d 504, 520 (7th Cir.1981), *cert. denied,* 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981) (where the Court held that "political disturbance" within the exception means organized form of violent aggression that disrupts political structure of a state). Moreover, he does not show that any of his alleged victims, i.e., Bank of Crete depositors, were combatants in any sense of the word. The nature of the conflict which Koskotas describes is rife with allegations of political corruption. However, it is basically an electoral struggle, while in the cases where the political exception protected the petitioner from extradition, protracted warfare between contending factions was occurring. In fact, the recent Greek democratically held elections of June 18, 1989 tend to discredit any claim that the political structure of the country has been disrupted to the extent divined in the aforementioned cases.

However, even assuming *arguendo,* that a political uprising existed in Greece at the time of the alleged crimes, Koskotas has failed to meet the second prong of the test. Koskotas' alleged crimes were not incidental to any alleged uprising, or "in aid of a political revolt, an insurrection or a civil war." *Ornelas, supra,* 161 U.S. at 511, 16 S.Ct. at 692.

Moreover, as the government has emphasized, the embezzlements with which Koskotas is charged allegedly occurred between January 1, 1986 and November 1988; the forgeries are alleged to have occurred prior to October 24, 1988; and, the obtaining of the passport allegedly occurred in 1987. During these times this Court finds that there simply was no war or revolution of any kind in Greece.

██ Additionally, the fact that terrorist organizations "routinely cite the Koskotas affair as a prime example of why violent revolution is necessary" (Koskotas Brief in Opposition, p. 43) does not demonstrate that Koskotas' alleged crimes were incidental to a violent political uprising within the meaning of the treaty.[5] Moreover, isolated acts of social violence, even if politically motivated and occurring during a time of political upheaval, are not sufficient to support a claim under the political offense exception. *Eain, supra* at 521.

Finally, both parties cite the case of *In re Extradition of Mylonas,* 187 F.Supp. 716 (N.D.Ala.1960) as support for their positions, as it is the only reported case providing an authoritative construction of Article III, political offense exception, of the Greek extradition treaty with the United States. In *Mylonas,* the defendant was charged with embezzlement committed while he had been a public official of a Greek community in the 1950's. He was later convicted and sentenced in *absentia* by the Greek courts. The Court held that his extradition, some three years later, was barred by the applicable statute of limitations. In addition, the Court emphasized Mylonas' military service in the Greek Civil War in the 1940's and described that war as "bitter, bloody and brutal." *Id.* at 718. The Court then stated in a rather perfunctory fashion that Mylonas could not be extradited to Greece because the offense for which he was charged "was incidental to, formed a part, and was the aftermath of

---

4. While Koskotas provided this Court with affidavits in the form of articles chronicling political "problems" in Greece, none of the articles exhibit the type of conflict contemplated by the Treaty or other analogous Treaties and cases predicated thereon.

5. This Court also notes that Koskotas' allegation that Greece has refused to extradite terrorists, citing the political offense exception, has absolutely no relevance to the instant case.

**22**

political disturbances", namely the Greek Civil War.

Koskotas, unlike the defendant in *Mylonas*, never claims to have committed the alleged acts in the name of political reform. Koskotas' alleged offenses—embezzlement, forgery, fraudulent procurement of a passport—are merely "common crimes with political overtones," *Eain, supra* at 523 n. 24; *see Quinn, supra* at 793–94, and his attempt to transmogrify these crimes into activities protected by the political offense doctrine must fail because "the exception does not apply to political acts that involve less fundamental efforts to accomplish change or that do not attract sufficient adherents to create the requisite amount of turmoil." *Quinn, supra* at 807. Moreover, Koskotas has failed to show that his acts have a sufficient nexus with any purported political conflicts in Greece. Therefore, this Court concludes and finds that the crimes for which Greece seeks the extradition of Koskotas are not "offenses of a political character" under Article III of the Treaty.

*Motives of Greek Government are Antipathetic to a Federal Court's Sense of Decency*

■ First, Koskotas asserts that case law "suggests" that this Court may inquire into the motives behind the Greek government's prosecution in order to determine whether they are "antipathetic to a federal court's sense of decency." In support of his contention, Koskotas principally relies on the cases of *Mylonas, supra; Rosado v. Civiletti*, 621 F.2d 1179 (2d Cir.1980), *cert. denied*, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980); and *Gallina v. Fraser*, 278 F.2d 77 (2d Cir.1960), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960).

However, this Court's gleaning of these cases uncovered no such principle of law. In *Mylonas, supra,* this Court found no language indicating that an examination of the motives of the requesting state is permissible. *Rosado, supra,* also relied upon by Koskotas, is hopelessly inapposite to the instant case. In *Rosado*, the petitioners presented ample evidence that their Mexican convictions were obtained by the use of torture and without "even a scintilla of rudimentary fairness and decency." *Id.* at 1182. Moreover, the *Rosado* court restricted its holding to finding authority for making *habeas* review available to United States citizens convicted and sentenced in Mexico who were returned to the United States under a treaty providing for the execution of penal sentences imposed in one nation in the prison of the other where "a persuasive showing that [their] conviction[s] were obtained without the benefit of any process whatsoever." *Id.* at 1198. Finally, in *Gallina, supra* at 79, the Court, in dicta, stated that:

> [W]e can imagine situations where the relator upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of [the rule of non-inquiry]. This is not such a case.

Perspicuously, the facts of the instant case are not of the genre imaginable by the *Gallina* court in its dicta.

In addition, Koskotas endeavors to persuade this Court to exercise its inherent supervisory authority to ignore the rule of non-inquiry because his acts were purportedly instigated, controlled, and coerced by the PASOK government. In support, Koskotas cites language from criminal cases [6] and extradition cases involving torture.[7]

**6.** *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) (where the Court reversed defendants' convictions because they were based on improperly obtained confessions); *Mesarosh v. United States,* 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956) (where the Court reversed convictions supported by false evidence); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (where the Court reversed convictions obtained through the use of improper prosecutorial practices); *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) (the Court reversed conviction supported by evidence gained through government misconduct).

**7.** *Prushinowski v. Samples,* 734 F.2d 1016 (4th Cir.1984) (court should deny extradition to country that tortures); *Rosado, supra* (torture used to obtain confessions and convictions).

Consequently, Koskotas' sally is unavailing.

It is beyond peradventure that this Court is not at liberty to speculate that the motives of the Greek government are improper. *In re Lincoln*, 228 F. 70 (E.D.N.Y. 1915), *aff'd per curiam*, 241 U.S. 651, 36 S.Ct. 721, 60 L.Ed. 1222 (1916); *Sindona, supra* at 173; *Neely v. Henkel*, 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448 (1901); *In re Locatelli*, 468 F.Supp. 568 (S.D.N.Y.1979). Further, "it is not the business of our courts (when 'a sense of decency' is not at issue) to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principles of comity upon which extradition is based." *Jhirad, supra* at 485, citing *Factor v. Laubenheimer*, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933). Accordingly, this Court will leave such matters to the State Department where they rightly belong. *Garcia–Guillern, supra* at 1192.

### Probable Cause

Koskotas urges this Court to deny extradition because in several cases, the evidence of alleged criminal conduct is insufficient to show commission of an act which is 1) an enumerated offense under the Treaty, or 2) punishable under the Criminal Code of Greece.

First, Koskotas contends that the Greek government's allegation that he made false statements to officials at the Greek Embassy in Washington, D.C. in order to cause them to issue him temporary travel papers is not an extraditable offense under the treaty.

In Greece, Koskotas is charged with an offense under Article 220(1), Greek Criminal Code, Obtaining By Fraud a False Certificate which requires the following elements:

(1) one who by deception,

(2) succeeds in being falsely certified in a public document,

(3) as to an incident which may have legal significance.

The government asserts that this offense is extraditable under Article II of the Treaty, which states:

Obtaining money, valuable securities or other property by false pretenses, or receiving any money, valuable securities or other property knowing the same to have been unlawfully obtained, where the amount of money or the value of the property so obtained or received exceeds two hundred dollars or the Greek equivalent.

 Koskotas asserts that since the only common element between the Treaty offense and the Greek crime is fraudulent intent and since the Greek offense contains no requirement that defendant obtained or received money or property of any value, Koskotas cannot be extradited to face charges as to a Greek crime that is not within the Treaty. While these assertions are correct, this Court cannot agree with Koskotas' conclusion. It is plain that falsely obtaining property where the amount or value of property so obtained exceeds two hundred dollars "is an incident which may have legal significance."

Furthermore, Koskotas also disputes that his alleged conduct falls within the Treaty terms. In that regard, he contends that the travel document is not "property" nor does it have a monetary value of over $200. However, the exhaustive list of items considered to be property under Massachusetts law, provided by Koskotas, does include an "order or certificate" and a "public record" which a travel document may clearly be. As to Koskotas' assertion that the travel document had no monetary value, this Court finds that for the purpose of the instant motion, the charge adequately conforms to the elements of the offense listed in the Treaty.[8] The government

---

8. Koskotas also asserts that this charge is barred by a three-month Greek statute of limitations pursuant to Article 6 of the criminal code of Greece and thus cannot be a basis for Greece's extradition request under Article V of the Treaty, which states in pertinent part:

A fugitive criminal shall not be surrendered under the provisions hereof when, from lapse of time or other lawful cause, according to the laws of ... the demanding country, the criminal is exempt from prosecution or punish-

need not, at this point in the proceedings, prove its case, but need only state a claim.

Koskotas makes a similar argument with regard to the charges of forgery and use of forgery. He asserts that the allegations fail to make out the requisite elements of forgery. Under Greek law, forgery and use of forgery contain the following elements:

(a) one who executes a forged document or one who alters a document, or who uses the same,

(b) with intent to use it to defraud another,

(c) concerning a fact which has legal significance.

The public prosecutor of the Athens Court of Appeals, Mr. Demitrious Doris, explained the nature of the charge in the following way:

> The crimes charged constitute forgery, and use of a forgery under Article 216 of the Criminal Code of Greece in that George Koskotas forged or altered or caused to be forged or altered the names of the five individuals on the purported statement of Merrill Lynch with the intent of falsely leading others to believe that the five individuals maintained accounts and assets at Merrill Lynch. The purported fact is of legal significance, within the meaning of the law of Greece. George Koskotas used the forged document for the purpose of falsely leading others to believe that the five individuals maintained accounts and assets at Merrill Lynch. Further, in forging or causing to be forged, the statements and in using the forged or altered statements, George Koskotas intended to cause damage to others and intended to enrich himself by obstructing the investigation and the prosecution of him and thereby intended to further his embezzlements and forgeries.

ment for the offense for which the surrender is asked.

However, Koskotas' assertion is unpersuasive. He cites to a court case from Greece which he does not provide the Court. He cites to Article 6 of the Criminal Code of Greece which he does not provide the Court. But, most importantly, he does not show that Article 220, under which

(Government's opposition to Motion to Dismiss, p. 29–30, Government's Exhibit 5a, 19).

▮ Koskotas avers that because a government witness, Mr. Koutsogiorgas, the former Deputy Prime Minister of Greece, mischaracterized Koskotas' alleged forgeries of Merrill Lynch statements as *defaming* members of the Greek government rather than *defrauding* another as to a fact of legal significance (Koskotas Brief in Opposition, pp. 63–65), the requisite element of "intent to defraud another concerning a fact which has legal significance" is absent and the charge must be dismissed. Moreover, Koskotas notes that the warrant containing the said forgery charges also cites Koskotas for the crime of Aggravated Defamation, which the government concedes is a non-extraditable offense.

While this Court is cognizant of the duty of defense counsel to zealously represent his client, the aforementioned allegation stretches the permissible bounds of advocacy to its limits. Irrefutably, the fact that a witness to an alleged crime mischaracterizes the precise legal definition of an offense does not negate probable cause. The offense with which Koskotas is charged is that he forged and used a forged document with the intent of misleading others to believe that five individuals maintained accounts at Merrill Lynch with the intent to enrich himself by obstructing the investigation and prosecution of him—clearly, if found, "facts of legal significance." Accordingly, this Court hereby denies Koskotas' motion to dismiss the charges of forgery and use of forgery because, at this juncture, these charges also adequately conform to the elements of the offense listed in the Treaty.

▮ Koskotas also asserts that the government's evidence is insufficient to

Koskotas is charged with Obtaining by Fraud a False Certificate, is inapplicable. Moreover, Koskotas does not dispute that Article 220 of the Greek Criminal Code is governed by the statute of limitations contained in sections 2 and 3 of Article 3 of the Greek Criminal Code which provide for a minimum five-year period of limitations.

support his convictions on the Obtaining by Fraud of a False Certificate, and Forgery or Use of Forged Documents charges. However, this Court finds that such claims are premature because sufficiency and weight of the evidence are issues to be resolved at the extradition hearing and not on a motion to dismiss.

Last, Koskotas asserts that there is no probable cause to support the misappropriation charges contained in the November 7 and 14, 1988 warrants. Specifically, Koskotas does not refute the government's "circumstantial facts" supporting the charge, but claims that "new evidence" in the form of a Bank of Crete audit report shows that the Bank of Crete "never had such sums in this country" and "it now appears that the Bank records falsely reflected large sums located here only to hide the Banks' domestic cash shortfalls." (Koskotas' Brief in Opposition, 66; Koskotas' Exhibit 104).

However, given the limited nature of an extradition hearing, the extent to which a defendant may present evidence is also limited. *In re Extradition of Singh*, 123 F.R.D. 108, 110 (D.N.J.1987). Moreover, while the defendant may present explanatory evidence, *see Ezeta, supra* at 992, it is well-settled that contradictory facts or evidence of alibi may be properly excluded in an extradition hearing. *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir.1973), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). The Court in *In re Extradition of Sindona*, 450 F.Supp. 672, 685 (S.D.N.Y.1978), clearly delineated the boundaries imposed upon a defendant's proofs as follows:

> The distinction between 'contradictory evidence' and 'explanatory evidence' is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting explanatory evidence, the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause.

The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that an extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits.

According to the government, the evidence demonstrates that "the books of the Bank showed the sums as belonging to the Bank of Crete (Exhibit 5d, Kalamitsis, 4–10 and exhibits thereto, exhibit 5b, Stefanides, 3–19, and exhibits thereto) that Koskotas represented that these sums belonged to the Bank of Crete (Id.), that the accounts were not, upon investigation, shown to be held in the name of the Bank of Crete (Id.), and that the accounts were found, upon investigation, to be held for the benefit of Koskotas or companies he owned. *Id.*" (Government's Opposition to Motion to Dismiss, p. 27).

Koskotas' proof, in the form of a Bank of Crete audit report showing that the Bank never had such sums, seeks to *contradict* the government's evidence of probable cause rather than explain it. Thus, if and once the government establishes probable cause, this "new evidence" submitted by Koskotas to refute probable cause becomes irrelevant to this Court's inquiry.[9]

*Procedural Irregularities*

■ Koskotas asserts that he has been precluded from fully preparing and assisting his counsel in the defense of this case as a result of 1) his detention pending the extradition hearing, and 2) a preliminary injunction issued by the United States District Court for the Southern District of New York in the civil action entitled *Bank of Crete v. Koskotas*, Civ. No. 88–8412, freezing all of his assets. He maintains that "due process" requires this Court to stay these proceedings until said conditions are ameliorated.

This Court cannot agree. While these circumstances are unfortunate, Koskotas' ratiocination is unavailing. First, this Court has determined, *infra*, that Koskotas

9. Koskotas also alleges that the Greek government deliberately withheld the audit report from the United States government. However, this claim was disputed by the government at the hearing, and is, in any case, not relevant to the probable cause inquiry.

is not a suitable candidate for bail and denied his renewed motion for bail. Second, as the government suggests, Koskotas can apply to the New York Court and appeal the issuance of the preliminary injunction. Additionally, the plethora of papers submitted by Koskotas' counsel tends to belie his claim of inadequate representation in this matter.

■ Koskotas also contends that any evidence submitted after the 60–day period allowed under Article XI of the Treaty [10] must be rejected. Neither the language of the Treaty nor the case law support this untenable position. *See, e.g., Greci v. Birknes*, 527 F.2d 956, 960–61 (1st Cir. 1976). Moreover, the two submissions to which Koskotas objects are affidavits (exhibits 6c and 6d) which merely corroborate evidence already presented.

■ Next, Koskotas asserts that the Greek government should not be permitted to seek extradition for any charge other than the charges for which he was provisionally arrested. More specifically, he claims that the warrants executed on December 8, 1988 are not properly before this Court. Once again, however, Koskotas' asseveration is unsupported by either the language of the Treaty or case law.

Article I of the Treaty provides in pertinent part for the extradition of any person "who may be charged with ... any of the crimes or offenses specified in Article II of the Present Treaty...." While the Treaty does not specifically provide for bringing new charges against someone who has been provisionally arrested, it does not restrict extradition to the offenses which serve as the basis for a provisional arrest.

Moreover, as the government indicates, a supplemental complaint for provisional arrest containing said charges was filed on March 20, 1989.

■ Finally, Koskotas insists that exhibits 6c and 6d are inadmissible because they were obtained in violation of 28 U.S.C. § 1782. (Koskotas Brief in Opposition, p. 72).

Title 28 U.S.C. § 1782 authorizes the district court to order a person residing in that district to give his testimony or statement or produce a document for use in a proceeding in a foreign or international tribunal. Further,

the order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal ... and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782.

In the instant case, the Public Prosecutor of the Court of Appeals of Athens issued a letter rogatory to the federal court in the Southern District of New York in connection with the prosecution of Koskotas for criminal charges in Greece. On December 23, 1988, a United States District Judge for the Southern District of New York properly entered an order enforcing the letter rogatory. On January 26, 1989, United States District Judge for the Southern District of New York, Charles E. Stewart, directed that the evidence obtained be forwarded to this district for this Court's consideration in the extradition of Koskotas. Thus, the submission of exhibits 6c and 6d is pursuant to Judge Stewart's Order and not pursuant to a letter rogatory. Consequently, Koskotas' protest is without merit. Moreover, this Court has no jurisdiction to rescind or modify another Court's Order.

In conclusion, for all of the reasons previously set forth, Koskotas' motion to dis-

---

**10.** Article XI of the Treaty states in pertinent part:

The person provisionally arrested, shall be released unless within two months of the date of arrest in Greece, or from the date of commitment in the United States, the formal requisition for surrender with the documentary proof hereinafter prescribed be made as aforesaid by the diplomatic agent of the demanding government, or, in his absence, by a consular officer thereof ... If the fugitive ... is ... merely charged with crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed, and of the depositions upon which such warrant may have been issued, shall be produced, with such other evidence or proof as may be deemed competent in the case.

miss the extradition proceedings is hereby denied.

### 3. MOTIONS FOR DISCOVERY AND INSPECTION AND LETTERS ROGATORY

■ In his motion for discovery, Koskotas seeks an order permitting him to inspect and/or photograph 38 categories of items within the possession, custody or control of the government at any time during this extradition proceeding. (See Koskotas' Motion for Discovery and Inspection). Further, he requests, through letters rogatory, that this Court order the Prime Minister of Greece and more than fifty other Greek officials to testify at his extradition hearing, and he seeks documents and information in their possession. (See Koskotas' Application for the Issuance of a Letter Rogatory).

First, Koskotas asserts that he has a right to such discovery under the Treaty. Koskotas states that he has the right to present evidence explaining why no probable cause exists to support the charges, showing how the crimes charged are "of a political character", and demonstrating that extradition would expose him to consequences "antipathetic to a federal court's sense of decency". Also, he contends that due process and case law entitle him to discover exculpatory evidence.

Preliminarily, since this Court has already determined, *infra*, that Koskotas' alleged crimes do not fall within the purview of the political offense exception of the Treaty, any requests for discovery on that issue are, of course, denied. Further, since this Court has also ruled *infra* that an inquiry into the motives of the requesting state is foreclosed in the instant case, requests pertaining to that issue are also denied.

In addition, this Court's gleaning of the Treaty uncovered no language authorizing the type or volume of discovery sought by defendant.

Second, Koskotas asserts that he has a constitutional right to such discovery.

■ However, while Koskotas is certainly entitled to a hearing prior to extradition under the Due Process Clause, *Sayne v. Shipley*, 418 F.2d 679, 686 (5th Cir.1969), *cert. denied*, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970), it is well-established by case law that Koskotas has no per se constitutional right to discovery. In *Singh*, *supra*, the Court held that:

> The Due Process Clause guarantees appellant the right to a hearing prior to extradition. That right may be satisfied by a statutorily required hearing, as is done in most United States international extradition cases ... Moreover, defendants have not been denied due process by the denial of any specific request for discovery.

*Id.* at 123–4, 126–7.

■ Further, the case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), repeatedly cited as authority by Koskotas, is not applicable to extradition cases. Courts have expressly held that *Brady* principles do not pertain to extradition hearings because no determination of guilt or innocence is being made. *Singh*, *supra* at 112; *Merino v. United States Marshal*, 326 F.2d 5, 12 (9th Cir. 1963), *cert. denied*, 377 U.S. 997, 84 S.Ct. 1922, 12 L.Ed.2d 1046 (1964). Moreover, the Sixth Amendment is also inapplicable to extradition cases because by its term it applies only to "criminal prosecutions" and an extradition hearing is not a "criminal prosecution." *Singh*, *supra* at 112; *Jhirad*, *supra* at 485 n. 9. Finally, the Fourth, Fifth and Sixth Amendments are also inapplicable as they require an indictment and confer upon the accused a right to confront witnesses. *Sayne*, *supra* at 685–686.

In further support of his request for discovery, Koskotas cites the case of *In Re Requested Extradition of McMullen*, 1988 WL 70296, [1988 U.S.Dist. Lexis 7201]. Koskotas relies on the case for the proposition that the accused has the right to *introduce* evidence explaining insufficiency of evidence proffered by the country demanding extradition. (emphasis added).

However, the facts and the holding of the *McMullen* case are clearly inapposite to

the instant case. First, the *McMullen* court permitted discovery of evidence in possession of the government pursuant to its interpretation of relevant Treaty provisions. In that case, the United Kingdom sought extradition of McMullen pursuant to a 1972 Extradition Treaty. The request for extradition was denied because his crimes were deemed "political offenses" under the treaty.

In 1986, a Supplementary Extradition Treaty was entered into by the United States and the United Kingdom which eliminated certain terrorist offenses from the purview of the political offense exception. The United Kingdom, in late 1986, then sought extradition of McMullen under the terms of the Supplementary Treaty and the 1972 Treaty.

The *McMullen* Court denied most of McMullen's requests for discovery with the exception of two issues for which discovery was granted pursuant to the terms of the Supplementary Treaty. McMullen's motion for discovery on evidence challenging the applicability of the Supplementary Treaty was granted. In addition, he was permitted to present evidence establishing that he would not receive fair treatment if he were returned to the United Kingdom pursuant to Article 3(a) of the Supplementary Treaty.

In the instant case, the treaty between Greece and the United States contains no such provisions. Moreover, Koskotas presents nothing to suggest that any of his discovery requests would produce "explanatory" evidence.

Koskotas also asserts a statutory right to discovery pursuant to 18 U.S.C. § 3191 and § 3190. However, these sections do not expand a defendant's right to discovery. Section 3190 [11] governs the admissibility of evidence submitted by the demanding country and is satisfied by a certification by an American diplomatic officer. Moreover, the advantages of this section in permitting the demanding country in international extradition proceedings to introduce ex parte depositions are not available to the defendant. *First National City Bank of New York v. Aristequieta,* 287 F.2d 219 (2d Cir.1960), *cert. granted,* 365 U.S. 840, 81 S.Ct. 803, 5 L.Ed.2d 807 (1961) vacated on other grounds, 375 U.S. 49, 84 S.Ct. 144, 11 L.Ed.2d 106 (1963). Section 3191 [12], entitled "Witnesses for Indigent Fugitives", was designed to secure attendance of resident witnesses at a hearing provided by section 3184 of this title and not witnesses residing in a foreign country. *Merino, supra* at 12. Thus, section 3191 is unquestionably and obviously not a basis upon which Koskotas can assert a right to compel testimony of witnesses located in Greece.

Last, Koskotas states that fairness dictates that he should have the same right as Greece to obtain discovery through a letter rogatory.[13] However, Koskotas' claim that "mutuality of discovery" is presumed in extradition cases is undeniably erroneous. To the contrary, "[t]he proce-

---

**11.** 18 U.S.C. § 3190 provides:

Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

**12.** 18 U.S.C. § 3191 provides:

On the hearing of any case under a claim of extradition by a foreign government, upon affidavit being filed by the person charged setting forth that there are witnesses whose evidence is material to his defense, that he cannot safely go to trial without them, what he expects to prove by each of them, and that he is not possessed of sufficient means, and is actually unable to pay the fees of such witnesses, the judge or magistrate hearing the matter may order that such witnesses be subpenaed; and the costs incurred by the process, and the fees of witnesses, shall be paid in the same manner as in the case of witnesses subpenaed in behalf of the United States.

**13.** In that connection, Koskotas also claims that Greece had improperly used the evidence obtained through its letter rogatory in this proceeding. However, this Court has already determined *infra* that such a claim is meritless.

dural framework of international extradition gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation." *First National City Bank of New York, supra* at 226. Further, "unique rules of wide latitude," *Application of First National City Bank of New York,* 183 F.Supp. 865, 871 (S.D.N.Y. 1960) govern the reception of evidence in extradition hearings. Additionally, this Court was unable to locate and defendant did not cite a single case in which a defendant was permitted to use letters rogatory to obtain discovery.

Accordingly, based on the above discussion, Koskotas' request for a letter rogatory is hereby denied.

■ Koskotas' "blanket" request for discovery must also be denied for several reasons. First, it is contrary to the nature and purpose of an extradition hearing. *Collins v. Loisel,* 259 U.S. 309, 316, 42 S.Ct. 469, 472, 66 L.Ed. 956 (1922). Second, such broad-based discovery would convert this proceeding into a full scale trial which it cannot be. *See Eain, supra* at 511. Third, given that the scope of the hearing is limited to establishing probable cause, *Shapiro, supra* at 905, Koskotas' right to present evidence is limited to that which explains, but does not contradict the Greek government's evidence. *In re Extradition of Sindona, supra* at 685. However, Koskotas fails to delineate how any of the information sought in his 38 discovery requests will assist him in explaining the government's evidence. Koskotas' overly broad requests for discovery are unprecedented and unsupported by the relevant case law.

Accordingly, this Court declines to use its discretionary authority to allow Koskotas to convert this proceeding into a full trial on the merits, in contravention of the nature and purpose of the extradition treaty, and hereby denies Koskotas' motion for discovery and inspection.

### 4. MOTION TO STAY PROCEEDINGS

Koskotas, by the instant motion, moves this Court to stay further proceedings in this case based on the occurrence of the following:

1. resolution of criminal proceedings currently pending against him in the United States;
2. a ruling on his discovery requests and the conclusion of evidentiary proceedings in pending libel suit brought by Prime Minister Papandreau against *Time* Magazine;
3. a resolution of a civil action pending against him in the Southern District of New York;
4. a ruling on his renewed motion for bail;
5. a ruling on his motion to dismiss this proceeding;
6. the outcome of the national elections in Greece on June 18, 1989.

Grounds 2 (ruling on his discovery requests), 4, 5 and 6 are now moot. Ground 3 has been discussed *supra* at p. 25, and this Court found that argument to be unavailing.

As to Koskotas' remaining arguments for a stay of these proceedings, this Court finds them to be unpersuasive.

■ First, Koskotas' claim that Article VI of the Treaty provides for a stay of these proceedings until "resolution of criminal proceedings currently pending in the United States" is erroneous. Koskotas refers to a criminal case involving an indictment returned against him in the Southern District of New York in 1980 on charges unrelated to this proceeding. In June of 1988, that Court dismissed the indictment. However, the United States has appealed the dismissal which is still pending at this time. Koskotas does not dispute that, upon dismissal, the bail posted by him was not reclaimed because it has now been seized as an asset in the *Bank of Crete v. Koskotas* case, and is not now being held as bail in the criminal matter.

Article VI of the Treaty states, in relevant part, that

If a fugitive criminal whose surrender may be claimed pursuant to the stipulations hereof, be actually under prosecution, or on bail or in custody, for a crime or offense committed in the country where he has sought asylum, ... his extradition may be deferred until such proceedings be determined ...

Koskotas is neither "actually under prosecution," nor "on bail or in custody" for that criminal charge, and thus, the treaty provision is wholly inapplicable.

Second, Koskotas' request that this Court stay its proceedings pending the outcome of evidentiary proceedings in a civil libel suit against *Time* Magazine in England, in which he is not even a party, is incredulous, at best. Koskotas claims the evidence developed in those proceedings will support his contention that the instant proceedings are improperly motivated and seek to prosecute him for acts of a "political character." Since this Court has already determined that the alleged acts do not fall within the political offense exception and that an inquiry into the motives of the requesting government is impermissible, the motion to stay these proceedings is hereby denied.

An extradition hearing shall be held on Tuesday, July 25, 1989 at 9:30 a.m. The parties shall exchange exhibits, previously marked exhibit lists and witness lists, and file same with this Court on or before July 20, 1989.