In The Matter of The Extradition of George Basil MYLONAS, a Fugitive from the Justice of Greece.

No. 14334.

United States District Court
N. D. Alabama, S. D.
Sept. 1, 1960.

W. L. Longshore, U. S. Atty., and George A. Blinn, Asst. U. S. Atty., Birmingham, Ala., for the United States.

Jerry Lorant, Birmingham, Ala., for defendant.

GROOMS, District Judge.

On June 3, 1959 the United States Attorney for the Northern District of Alabama, acting in behalf of the Government of Greece, and pursuant to the Treaty of Extradition of May 6, 1931, between the United States and Greece [1], filed a complaint seeking the extradition of George Basil Mylonas, a former citizen and resident of the Community of Ambelophyton, County of Trifilia, Province of Messinia, Kingdom of Greece, but now a resident of Birmingham, Alabama, and an employee of the La Paree Restaurant.

The alleged crime for which extradition is sought is that of embezzlement.[2]

The defendant Mylonas has moved to be discharged on the ground that (1) he is innocent of every charge of embezzlement; (2) that his rights to a prompt and speedy trial have been violated; (3) that by virtue of the lapse of time he is exempt from prosecution or punishment under Article V of the Treaty [3]; (4) that the proceedings seeking to extradite him are for acts connected with alleged crimes or offenses of a political nature excluded by Article III of the Treaty [4]; (5) that he

---

1. 47 U. S. Statute at Large 2185.

2. This crime is defined in paragraph 15 of Article II of the Treaty as follows:
"Embezzlement or criminal malversation committed within the jurisdiction of one or the other party by public officers or depositaries, where the amount embezzled exceeds two hundred dollars or Greek equivalent."

3. "A fugitive criminal shall not be surrendered under the provisions hereof, when, from lapse of time or other lawful cause, according to the laws of either of the surrendering or the demanding country, the criminal is exempt from prosecution or punishment for the offense for which the surrender is asked."

4. "The provisions of the present Treaty shall not import a claim of extradition for any crime or offense of a political character, nor for acts connected with such crimes or offenses; and no person surrendered by or to either of the High Contracting Parties in virtue of this Treaty shall be tried or punished for a political crime or offense committed before his extradition. The State applied to, or courts of such State, shall decide

has once been placed in jeopardy for the offense upon which his extradition is sought by trial held on October 27, 1955, in the Court of First Instance for Kyparissia and by judgment of discharge by that court.

The defendant was reared in the Town of Ambelophyton. He entered the Greek Army in July, 1940, and was assigned to the First Artillery Group of the Fifth Division where he fought on the side of the Allies until Greece was occupied by the German and Italian Armies. Thereafter, in the Civil War instigated by the Communists, the defendant and his two brothers volunteered to and did fight the Communists. He was in command of a unit charged with the protection of his Community. His brother Constantine fell at Gargalianous, in September, 1944, and his brother John [5], at Athens in the same year. His uncle and other members of his family were engaged in this struggle against the Communists, who destroyed the defendant's home and stole his property and belongings, cremated his aunt in the flames of her own home, and wrought havoc in general, including the destruction of hundreds of people by such devilish devices as throwing them into wells to suffocate. The struggle was long; it was bitter, bloody and brutal. The Community divided into three factions—the Communists, the Anti-Communists, and the neutrals. As history attests, the Anti-Communists prevailed in the battle of arms.

By 1950 the defendant emerged as a popular and heroic figure in his Community. In that year he ran, along with four others, on the Anti-Communist ticket, for City Councilman. The ticket won by a landslide. Under a rotation system whereby each councilman would serve one year as president of the Council, the defendant was selected to serve for 1953. The Council and the populace in general appear to have been so well satisfied with his leadership that, contrary to custom, he was also selected to serve for the year 1954.

By the time of the general election in November, 1954, the political winds had veered to the left. The Communists, profiting from the chaos which they had created, had greatly increased their influence, and set about to accomplish by ballot what they could not accomplish by arms. In the general election, and in the run-off in February, 1955, the defendant's slate lost, although the defendant won by a large popular vote. Despairing of the hope of ever getting along or doing anything constructive with the Council as then constituted, the defendant decided to accept the invitation of his uncle, William DeMoes, the owner of La Paree Restaurant, to emigrate to Birmingham, Alabama, and to establish a new life for himself.

On June 27, 1955, charges were lodged against the defendant with John Papadopoulos, Public Prosecutor of the Kyparissia Misdemeanour Court. These charges were preferred by Konstantine Petropoulos, the then President of the Community of Ambelophyton.

Anthony Vayanos, the Investigating Magistrate of the Court of First Instance for Kyparissia, began an investigation of the charges. On various dates prior to October 27, 1955, he examined thirteen witnesses. During this period, Vayanos had the assistance of Constantine Christodoulou, Justice of the Peace of Platamidi, who examined or reexamined eight witnesses.

On October 27, 1955, trial was had in the Court of First Instance for Kyparissia, before G. Papageorgandis, Judge of said Court, upon the report of the Investigating Magistrate, Anthony Vayanos. The charges were read to the accused, who waived time to present his defense and insisted upon presenting his defense at once. For answer he stated the charges were "entirely untrue and unfounded," and politically inspired by the new President of the Community; that he did not appropriate to his own use

whether the crime or offense is of a political character * * *."

5. These brothers were also sometimes referred to as Nick and Gus.

27,098/[6] drachmas (old issues), but, on the other hand, the Community owed him several thousand drachmas for personal moneys which he had expended on behalf of the Community. He proposed the calling of certain witnesses, five in number, but whether they actually testified is not apparent from the proceedings.[6a]

Having decided to emigrate to the United States, the defendant applied to the Prosecuting Attorney of the Magistrate Court for an affidavit that he was not being sought in the district as a Fugitive from Justice or Defaulter. John Papadopoulos, the party with whom the charges had been lodged, and who set the investigation in motion, gave the defendant the requested affidavit on September 28, 1955. Three days previously the defendant had applied to K. Petropoulos, the President of the Community, for an affidavit of nativity, birth date and residence. This affidavit was made. Both Papadopoulos and Petropoulos had full knowledge at the time they made the the affidavits that applicant was planning on emigrating to the United States.

In November, 1955, the defendant left Greece. On December 1, 1955, the investigation was resumed by George Papageorgantos, then Examining Magistrate

of Kyparissia. On April 12, 1956, the hearing was held by the Court of Misdemeanours at Kyparissia, composed of three judges, the same John Papadopoulos prosecuting. The trial in absentia was wholly without the knowledge of the defendant. The charges were read, the same K. Petropoulos, the President of the Community, testified. Also testifying were twelve other witnesses. None of the witnesses that defendant proposed to call at the trial on October 27, 1955, was called. The accused was convicted and sentenced to two years in prison, and deprived of his civil rights for five years. The claim for damages presented by Petropoulos as President of the Community, was referred to the Civil Courts.

Not only did the defendant have no knowledge of the charges or prosecution, but he was not represented by counsel and no one appeared for him. He had no witnesses present, nor does the record reveal any cross-examination of the witnesses used against him.

It is apparent that the political winds had veered again by the time of the 1958 election in Ambelophyton. This is evident from the testimony of G. L. Xiarhos,[7] the Secretary of the Community, and others who were called to testify on

6. Referred to as 27.098,000 (old issues).

6a. The record of the proceedings of the Court of First Instance recites that the report "was drawn up before Ant. Vayanos, Investigating Magistrate for Kyparissia, * * * read, confirmed and signed * * *
The Investigating Magistrate: Ant. Vayanos
The accused: George B. Mylonas
The Court's Clerk: D. Constantopoulos
The defence solicitor: Christos G. Barbarrigos
Submitted to the State Attorney for a decision
Kyparissia, October 27, 1955
The Investigating Magistrate
A. Vayannos
Should be released at once
The Acting State Attorney
G. Papageorgandas, Judge of the Court of First Instance."

7. On August 24, 1955, G. Xiarhos testified:
"The decisions taken by the Community Council of drawing moneys of the Com-

munity for the performance of communal works as well as of rendered accounts to the Normarchy (County Commission) of Messinia on communal work performed or otherwise, were unanimous * * * as to the works for which the accused is accused, I know this: 1) the water reservoir at the Place "Platanos" has not been done, and the accused cashed the amount of 3,000,000 drachmas (old issues). The job at the Place "Arvaniti" has not been done either; 2) as for the other jobs an engineer must be called to ascertain whether they have been done or not, and whether he expended the moneys he cashed for those jobs. I have nothing else to add. * * *"

At the trial in absentia, on April 12, 1956, Xiarhos testified that the accused

"did not manage properly the moneys he had received from the Community and which was intended for specific projects, because the work actually done does not cover the money received * * * In fact, the accused did embezzle considerable funds of the Community and his re-

more than one occasion. Some of these witnesses gave testimony on as many as three such occasions. It would be the work of supererogation to analyze the twists and turns of the testimony, witness by witness. It suffices to say that contradictions, variations and changes of position are obvious on even a casual reading of a particular witness's testimony; and this is true of a number of the witnesses.

There was a limit on the number of drachmas the Community Council could spend on a given project or improvement. Expenditures above this limit had to be approved by the Provincial Council of Messinia. It appears that the Community Council would place in the budget requests for money for a named project, and when received some of the money would be used for other and perhaps more urgent projects which did not require the Provincial Council's approval.

Both the Community Council and the Provincial Board subsequently approved the expenditures.

There is nothing whatever to indicate that the defendant fled the realm to avoid prosecution. The evidence is directly to the contrary. He left with full knowledge of the Community.

The significant dates relating to the timeliness of these proceedings are as follows:

The offenses were allegedly committed during the period from 1952 to 1954. Charges were lodged June 27, 1955. After investigation, trial was had at the Court of First Instance on October 27, 1955. The defendant departed for the United States in November, 1955. Trial was had in the Court of Misdemeanours on April 12, 1956. On the 13th day of September, 1957, the United States Ambassador to Greece furnished the Greek Authorities a certificate certifying the documents in the case. It was not until May, 1959, that the United States, through diplomatic channels, received a request through the Greek Ambassador for extradition from the Greek Government, directed to the Secretary of State of the United States. On the third day of June, 1959, these proceedings were instituted.

 The proceedings here partake of the nature of a preliminary examination for the purpose of determining whether a case is made out which will justify the holding of the accused,[8] and it is not for the purpose of determining whether the accused is guilty or whether the evidence is sufficient to justify a conviction.[9] Consequently, the assertion of innocence by the accused cannot serve the office of the plea of "not guilty" in the sense that that plea is ordinarily employed. It does, however, require a determination whether there is competent evidence to justify the holding of the accused, and whether a case is made out to that extent.

 A plea of former jeopardy cannot be predicated upon the results of a

---

ceipts are not correct, because he used to have the workmen sign in blank, and he would fill in the number of days worked as he chose. * * * I, as Clerk of the Community, told him once that what he was doing was a fraud on the State, but his reply was 'Your job is to do the writing work.'"

On July 27, 1959, Xiarhos deposed that the accused was

"A true patriot, a dreaded foe of the Communists element of Greece. He was a model citizen * * * an honest servant * * * handling public funds with exemplary integrity. He was charged rather for a breach of formality as a result of a political impasse, and, not, in essence, for embezzlement of public funds.

"Further, as shown by our Community records, the records of public expenditures submitted by the Governing Board of the Community of (to) the Provincial Board of Messinia have been duly and properly approved by the members of the Board under his Presidency. These have been judged by the Provincial Board of Messinia as being in order * * *."

8. Benson v. McMahon, 127 U.S. 457, 8 S. Ct. 1240, 32 L.Ed. 234.

9. Collins v. Loisel, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956.

preliminary hearing. A discharge upon such a hearing is not an acquittal.[10]

◼ The jurisdiction of the Court of First Instance of Kyparissia is not shown. This Court cannot take judicial knowledge of the laws of Greece fixing its jurisdiction.[11] Since the court is designated by name as the "Court of First Instance" and the Magistrate holding same as the "Investigating Magistrate", it is likely that the hearing was a preliminary one. If under the Greek law a plea of former jeopardy would be applicable as to a judgment discharging the accused by the Court of First Instance, and, if such defense could be here asserted, nevertheless, on this record it is not established.

◼ The defendant maintains that under Article V of the Treaty, due to "lapse of time or other lawful cause," he is exempt from prosecution and has been deprived of a prompt and speedy trial. This Article would apply to any applicable statute of limitations,[12] and should also be held to apply to the provisions for a speedy trial as spelled out in the Sixth Amendment to the Federal Constitution and by Article I, Section 6, of the Alabama Constitution.

In this age of rapid communication and transportation there is little or no justification for waiting more than three years from the initiation of a prosecution before taking steps to apprehend the accused, when, at all times intervening, his whereabouts was fully known to the prosecuting authorities of Greece.

◼◼ The fact that the accused was convicted in absentia would not preclude his extradition.[13] For the purpose of these proceedings, his conviction in absentia in Greece is to be regarded not as a conviction of, but only as a charge of crime.[14] So considering the case, I am of the opinion that the accused has not been afforded a speedy trial, and that extradition should be denied on that ground, whether the failure to act be said to fall within the exemption due to "lapse of time," or whether due to "other lawful cause."

In recognition of our traditional policy not to assist in the prosecution of political offenses,[15] our Treaty with Greece specifically excludes extradition "for any crime or offense of a political character." The Treaty further provides that the courts of the State applied to shall decide whether or not the offense is of a political nature.

The Supreme Court has said[16] that:

"Care should doubtless be taken that the treaty be not made a pretext for collecting private debts, wreaking individual malice, or forcing the surrender of political offenders * * *."

◼ After a careful consideration of the record and of the oral testimony, I am of the opinion that the offense for which extradition is sought was incidental to, formed a part, and was the aftermath of political disturbances, and accordingly "of a political character" of the nature proscribed by the Treaty.

For the reasons assigned, the complaint should be, and the same is hereby dismissed and the defendant be and he is hereby discharged.

10. Collins v. Loisel, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062.

11. Rowan v. Commissioner, 5 Cir., 120 P. 2d 515.

12. Title 15, Section 221, Alabama Code of 1940, requires prosecution for embezzlement to be commenced within three years from the commission of the offense. Gleason v. State, 6 Ala.App. 49, 60 So. 518.

13. Gallina v. Fraser, D.C.D.Conn., 177 F. Supp. 856.

14. Ex parte Fudera, C.C.S.D.N.Y., 162 F. 591; Ex parte La Mantia, D.C.S.D. N.Y., 206 F. 330.

15. United States ex rel. Giletti v. Commissioner of Immigration, 2 Cir., 35 F.2d 687. 15 Ky.Law J. 30, 35.

16. Grin v. Shine, 187 U.S. 181, 23 S.Ct. 98, 100, 47 L.Ed. 130.