UNITED STATES of America
v.
Nicholas DiSTEFANO et al., Defendants.
No. 70 Cr. 1030.

United States District Court,
S. D. New York.

Aug. 16, 1972.

See also, 2 Cir., 464 F.2d 845.

---

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for the United States; Walter M. Phillips, Jr., Asst. U. S. Atty., S. D. N. Y., of counsel.

Evseroff, Newman & Sonenshine, Brooklyn, N. Y., for defendant Nicholas DiStefano; Gustave Newman and Jacob Evseroff, Brooklyn, N. Y., of counsel.

  (d) as directed by the court.

  (2) Proof of service outside this State may be made by affidavit of the individual who made the service or in the manner prescribed by law of this State, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction. When service is made pursuant to paragraph (c) of subsection (1) of this section, proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court.

Albert J. Krieger, New York City, for defendant Edmund Rosner; Ivan S. Fisher, New York City, of counsel.

METZNER, District Judge:

The government moves to reinstate an indictment which was dismissed by this court on January 24, 1972, for failure to prosecute.

The indictment was originally filed on December 8, 1970, and charged defendants Nicholas DiStefano, Wilfredo Moreno, Edmund Rosner and Frank Russo with subornation of perjury and conspiracy to suborn perjury. The offenses charged allegedly arose out of the criminal trial of one Pedro Hernandez in March of 1967. Hernandez was convicted of violating the federal narcotics laws, and the government claims that the alibi defense which he entered at trial was manufactured by his lawyer, defendant Rosner with the aid of defendants DiStefano, Moreno and Russo.

On January 25, 1971, Rosner filed a motion to dismiss for delay in bringing the indictment. This motion was denied by the court on March 22, 1971, and at the same time various motions by the defendants for discovery and bills of particulars were disposed of.

On March 24, 1971, a pretrial conference was held to set a trial date. The government represented that it was ready to go to trial in April or May, but because of the trial commitments detailed by the four defense counsel the court set Monday, November 1, 1971, as the trial date. Counsel were advised at the time that there would be no adjournments of this date. In fact, this court refused requests from several judges in October to adjourn the trial so as to release one or another of defense counsel.

On Wednesday, October 27, 1971, a conference of all counsel was scheduled at the government's request, at which time the government applied for an adjournment on the ground that it was unable to locate two of its witnesses. The government for the first time informed the court that it had been unsuccessfully attempting to locate the witnesses since August of 1971. In fact, the government, in an affidavit subsequently filed in this matter, stated that it had begun looking for the witnesses in July.

The court inquired what would happen if the government's request was granted and the witnesses were still unavailable on the adjourned date. The Assistant United States Attorney responded: "Well, if I could suggest an adjournment to sometime early next year, the government will just have to put up or shut up with the case at that point, your Honor." This statement was understood by everyone present as a commitment by the government to proceed on the adjourned date even if it had not located the witnesses. The government further stated to the court that "if we were to have a January [trial] date . . . I think by then we would have enough time to locate these witnesses."

The court, over strenuous objection by defense counsel, set January 4, 1972, as the new trial date. The government's response to the new date was "Fine, your Honor." The court impressed upon both sides that there would be no further adjournments, and that if the government was not prepared to go to trial on January 4 the indictment would be dismissed.

When the case was called for trial on January 4, 1972, the government requested "that this case be adjourned for a short period of time," stating that it had found one witness but was still missing one. The government stated that it did not "see any prejudice to the defendants, again, if there is a short adjournment of this case." The missing witness, Pedro Hernandez, was the defendant in the 1967 case, and the government felt that it could not proceed to trial without him. Although the defendants strongly objected and moved for a dismissal, the court stated that it was willing, under the circumstances, to give the government an additional reasonable adjournment of three weeks. In granting the adjournment, the court relied on the government's representation that it

had leads as to Hernandez's whereabouts and on the government's concession that, if after seven months of searching it had not found the missing witness, he never would be found. The following colloquy occurred between the court and the Assistant United States Attorney in charge of the case:

"The Court: I'll rely on [Mr. Phillips'] representation, if he makes it, that they are on the trail of Mr. Hernandez and if they don't have him by January 24, they are never going to have him.

"Mr. Phillips: I think that is a fair statement, your Honor."

Further on in the discussion that morning, the court paraphrased the government's position as follows:

"In this case, Hernandez is very important to us. If we can't get him, we'll go to trial with the two of them, but we want three more weeks to get him because we think we can get him in that three weeks.

"Mr. Edelbaum: Is that what you are saying? If you would only say that, I would like to know that.

"Mr. Phillips: Well, yes."

The court further emphasized that no additional adjournments would be granted past January 24. Mr. Phillips was fully aware of the consequences of an application for further delay, stating: "Well, I assume that your Honor is . . . making the statement that if on the 24th we are not prepared to go to trial, that your Honor will dismiss the indictment." This second adjournment caused the court to request several of his fellow judges to rearrange their trial schedules so that all four defense counsel would be free of other commitments on January 24.

On January 24, 1972, the government announced that it was still not ready to proceed to trial because Hernandez had not been located. The court granted the defendants' motion to dismiss the indictment for failure to prosecute because, as it stated on the record, it was of the opinion that seven months was a reasonable time within which to require the government to locate its witness. Furthermore, the court stated that it relied on the firm commitments made by the government on October 27 and January 4, as quoted above.

On February 3, 1972, the government filed a notice of appeal to the United States Court of Appeals for the Second Circuit.

On March 14, 1972, the statute of limitations covering the offenses charged in the indictment expired. On March 23, 1972, the government was informed by agents of the Federal Bureau of Investigation that Hernandez had surfaced in Mexico City. The government on April 17, 1972, made a motion before this court to reargue the earlier motion to dismiss the indictment. That motion was denied, and on April 21, 1972, the government petitioned the Court of Appeals for a writ of mandamus directing this court to reinstate the indictment on the ground that the court abused its discretion in dismissing the indictment.

On July 17, 1972, the Court of Appeals denied the petition for mandamus and dismissed the appeal for want of appellate jurisdiction. United States v. DiStefano, 464 F.2d 845 (2d Cir. 1972). The present motion to reinstate the indictment was noticed for hearing on August 10.

The motion must be denied because, the statute of limitations having run, the court is without power to reinstate the indictment. When an indictment is dismissed because of technical defects or irregularity in the grand jury, a new indictment may be returned within six months of the date of dismissal even though the statute of limitations has run or might run in the interim. 18 U.S.C. §§ 3288, 3289. However, where the indictment has been dismissed for failure to prosecute, reindictment is not possible once the statute of limitations expires. See United States v. Strewl, 99 F.2d 474 (2d Cir. 1938), cert. denied, 306 U.S. 638, 59 S.Ct. 489, 83 L.Ed. 1039

(1939); United States v. Moriarty, 327 F.Supp. 1045 (E.D.Wis.1971). Similarly, just as the grand jury lacks power to reindict, so also the district court lacks power to reinstate an indictment dismissed for lack of prosecution once the statute of limitations has run. See United States v. McCarthy, 445 F.2d 587 (7th Cir. 1971); United States v. Liguori, 430 F.2d 842, 851 (2d Cir. 1970) (concurring opinion of Lumbard, C. J.), cert. denied, 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971).

As Chief Judge Friendly pointed out in his opinion dismissing the appeal in this case,

> "An added factor here is that the dismissal did not 'bar' another prosecution. The statute of limitations had not yet run and there was nothing to prevent a new indictment [citations omitted]." (p. 849).

Two months elapsed between the dismissal of the indictment and the running of the statute of limitations. Five months have elapsed between the running of the statute of limitations and the present application.

The government contends that a court "always has the inherent power to overrule its own decisions and orders" despite the running of the statute of limitations. The chaos that would result from the application of such a rule is clearly apparent.

Suppose the government refuses to divulge wiretap information on the ground that it would compromise its sources of information, or affect the national security, or imperil ongoing investigations. Under Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the court would then have to dismiss the indictment. It cannot possibly be argued that a year after such a dismissal and after the statute of limitations has run, a court would have the power to reinstate the indictment on a representation by the government that the wiretap information could now safely be revealed.

Motion denied. So ordered.