**Genevieve Ann–Marie YAPP, Petitioner–Appellant,**

v.

**Janet RENO, Attorney General of the United States of America, Respondent–Appellee.**

**No. 92–4905.**

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1994.

---

Brenda G. Bryn, Asst. Federal Public Defender, Miami, FL, for appellant.

Mary K. Butler, U.S. Attorney's Office, Jeanne M. Mullenhoff, Linda Collins Hertz, Asst. U.S. Attys., Miami, FL, for appellee.

Before COX and CARNES, Circuit Judges, and WOOD *, Senior Circuit Judge.

COX, Circuit Judge:

*Introduction*

The principal issue in this case is whether the lapse of time provision in the United States extradition treaty with the Commonwealth of The Bahamas bars extradition when a defendant's right to a speedy trial under the Sixth Amendment to the United States Constitution has been violated by Bahamian officials. We hold that the district court correctly decided that the lapse of time provision refers only to the running of either nation's applicable statute of limitations and *not to violations of the constitutional right to a speedy trial.*

I. *Background*

In April 1986, Genevieve Ann–Marie Yapp was arrested in The Bahamas after an airport customs inspection allegedly revealed over 100 grams of cocaine powder in a brown paper bag concealed under her clothing. Yapp, a Jamaican national and a permanent resident of the United States, was charged with exportation of dangerous drugs, posses-

* Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

sion of dangerous drugs with intent to supply in violation of the Dangerous Drugs Act, Bah.Rev.Stat.Law, ch. 223 (1965), *as amended by* Act No. 1 (1980) (Bah.) (current version at Bah.Rev.Stat.Law, ch. 213 (1988)). The next day, she was arraigned in Magistrate's Court in Nassau and released on bond on the condition that she return for trial in July 1986. Yapp then traveled to the United States.

Yapp states that the Bahamian authorities confiscated her green card during her arrest. She says that after her arraignment, the police did not return the green card, but gave her a receipt with her green card number on it, promising her that she would be able to use the receipt to travel. Yapp also states that the Bahamian authorities copied her work telephone number, the telephone number and address of a girlfriend with whom she was staying in Miami, and the address of her sister, Jacqueline Yapp.

Yapp says that after returning to Miami, she spoke with an official in the U.S. Immigration Office and was told that she would need to resolve her case in The Bahamas before she could recover her green card. According to Yapp, she went to the airport and attempted to purchase a ticket to Nassau the day before her trial was scheduled, but the airline would not honor the green card receipt she had been given in The Bahamas. Yapp says she then called her lawyer in the Bahamas and was told that he would attempt to obtain a continuance. Yapp insists that she again tried without success to fly to Nassau on the scheduled day of her trial.

Yapp's lawyer was able to obtain a continuance until October 1986. However, Yapp failed to appear for trial in October 1986, and a warrant for her arrest was issued in The Bahamas.

## II. *Procedural History*

In May 1988, the government of The Bahamas filed a formal request for extradition under the 1931 Extradition Treaty in force between the United States and the Commonwealth of The Bahamas. Extradition Treaty, Dec. 22, 1931, U.S.–U.K., 47 Stat. 2122, *continued in force by* Extradition Agreement, Mar. 7–Aug. 17, 1978, U.S.–Bah., 30 U.S.T.

187 (the "1931 Extradition Treaty"). In August 1990, the United States filed a complaint for Yapp's extradition and a motion requesting that a certification of her extraditability and commitment be forwarded to the Secretary of State in accordance with 18 U.S.C. § 3184 (1988) and Article 8 of the 1931 Extradition Treaty. A warrant was issued, and Yapp was arrested and arraigned a few days later in the United States District Court for the Southern District of Florida.

At a hearing in April 1991, the magistrate judge accepted the parties' stipulations and found that for the purposes of 18 U.S.C. § 3184, there was sufficient evidence that: (1) there were charges pending against Yapp in The Bahamas; (2) Yapp was the person sought to be extradited; (3) there was probable cause to believe that Yapp committed the crimes with which she was charged in The Bahamas as named in the extradition complaint; and (4) the charged offenses were crimes for which the United States was required to seek extradition pursuant to Articles 3 and 5 of the 1931 Extradition Treaty. The magistrate judge also found that Yapp had been charged within the Bahamian six-month statute of limitations.

Yapp moved to dismiss the extradition complaint on the grounds that: (1) her right to a speedy trial under the Sixth Amendment to the United States Constitution had been violated by Bahamian authorities, *see Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972) (announcing factors to be weighed in determining a speedy trial violation); and (2) Article 5 of the 1931 Extradition Treaty barred extradition: (a) when the applicable statute of limitation in either country had run, or (b) when the defendant's constitutional right to a speedy trial had been violated. Yapp argued that the Bahamian government's failure to seek her extradition from July 1986 until April 1988 and its confiscation of her green card, which prevented her from returning to The Bahamas, violated her speedy trial rights. The United States opposed Yapp's motion on the grounds that a United States court could not impose the U.S. constitutional right to a speedy trial upon Bahamian courts,

and alternatively, that Yapp had failed to failed to establish a speedy trial violation.

The magistrate judge denied Yapp's motion to dismiss the extradition complaint, found her to be extraditable, and certified her extraditability pursuant to 18 U.S.C. § 3184. Addressing Yapp's argument that Article 5 of the 1931 Extradition Treaty barred her extradition, the magistrate judge held that Article 5 only barred extradition when an applicable statute of limitations had run and did not apply to alleged violations of a defendant's right to a speedy trial under the United States Constitution. Because the magistrate judge held that the right to a speedy trial in the United States Constitution could not be imposed on the Bahamian courts under the 1931 Extradition Treaty, he declined to consider whether Yapp had established a speedy trial violation.

Yapp then petitioned the district court for a writ of habeas corpus. The district court denied the petition and adopted the magistrate judge's Report and Recommendation, holding that "the right to speedy trial is not applicable to extradition proceedings, and that the treaty at issue in this case does not require otherwise." R. 1–11 at 1. Yapp appeals the judgment of the district court.

### III. *Issues on Appeal*

The threshold issue is whether Article 5 of the 1931 Extradition Treaty bars extradition when a defendant's speedy trial rights under the Sixth Amendment have been violated by Bahamian officials. If Article 5 does bar extradition under these circumstances, the second issue is whether Yapp's Sixth Amendment right to a speedy trial has been violated.

### IV. *Standards of Review*

 As we noted last year in *Martin v. Warden, Atlanta Pen,* 993 F.2d 824 (11th Cir.1993), extradition is an executive function and habeas corpus review of a magistrate judge's certification of extraditability is limited to deciding "whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was rea-

sonable ground to believe the accused guilty." *Id.* at 828 (quoting *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925)). Deciding this case, however, also requires us to interpret the meaning of the lapse of time provision of the 1931 Extradition Treaty. Treaty interpretation presents a question of law, subject to *de novo* review. *In re Extradition of Howard,* 996 F.2d 1320, 1329 (1st Cir.1993); *United States v. Merit,* 962 F.2d 917, 919 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 244, 121 L.Ed.2d 178 (1992). Determining whether a defendant's right to a speedy trial has been violated is a mixed question of law and fact; we review the law *de novo* and findings of fact for clear error. *United States v. Premises Located at Route 13,* 946 F.2d 749, 754 (11th Cir.1991); *United States v. Wragge,* 893 F.2d 1296, 1298 n. 4 (11th Cir.1990).

### V. *Discussion*

 In *Neely v. Henkel,* 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448 (1901), the Supreme Court said:

> When an American citizen commits a crime in a foreign country, he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people, unless a different mode be provided for by treaty stipulations between that country and the United States.

*Id.* at 123, 21 S.Ct. at 307. Thus, we have held that "[w]hen a defendant is tried in a foreign country, he or she is entitled only to the procedural protections accorded by foreign law." *Martin,* 993 F.2d at 830. We have accordingly refused, as a matter of constitutional law, to recognize any right to a speedy trial in international extradition proceedings under either the Sixth Amendment or the Due Process Clause of the Fifth Amendment. *Id.* at 829; *see also Sabatier v. Dabrowski,* 586 F.2d 866, 869 (1st Cir.1978) (Sixth Amendment not applicable to extradition proceedings); *Jhirad v. Ferrandina,* 536 F.2d 478, 485 n. 9 (2d Cir.) (same), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976).

■ Conceding these points, Yapp argues that while the Sixth Amendment's guarantee of a speedy trial may not apply to international extradition proceedings by its own force or through the Due Process Clause, *Neely* says it will apply where "provided for by treaty." 180 U.S. at 123, 21 S.Ct. at 307. Yapp then points to Article 5 of the 1931 Extradition Treaty, which provides that

> extradition shall not take place if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.

1931 Extradition Treaty, art. 5, 47 Stat. at 2124.[1] Yapp argues that a lapse of time after "the institution of the penal prosecution" must refer to a speedy trial violation. Thus, she, asserts that Article 5 prohibits extradition because Bahamian authorities violated her right to a speedy trial under the Sixth Amendment.

The district court noted that "[m]any civil law countries have statutes of limitations which apply to the time within which a person must begin serving a sentence" and decided that it was "likely that the language of the treaty regarding a lapse of time since the 'institution of the prosecution' refers to this limitation rather than to speedy trial." R.1–9 at 5. The government now similarly argues that Article 5 refers only to the running of either nation's applicable statute of limitations, not to an alleged speedy trial violation.

Yapp's argument that Article 5 of the 1931 Extradition Treaty applies to a speedy trial violation by a foreign government, in addition to the running of a statute of limitations, presents a question of first impression in this country. The fact that the 1931 Extradition Treaty remains in force with 30 nations around the world makes this a question of some importance.[2] We begin our analysis with what Yapp asserts is "the only reported decision even close to being on point here." Appellant's Br. at 11.

In the case reported as *In re Extradition of Mylonas,* 187 F.Supp. 716 (N.D.Ala.1960), the district court considered the meaning of the lapse of time provision in the United States extradition treaty with Greece. Treaty of Extradition, May 6, 1931, U.S.–Greece, art. V, 47 Stat. 2185, 2190. The defendant argued that he was exempt from prosecution due to "lapse of time or other lawful cause" because he had "been deprived of a prompt and speedy trial." *Mylonas,* 187 F.Supp. at 721. The district court decided that the lapse of time provision "would apply to any applicable statute of limitations, and should also be held to apply to the provisions for a speedy trial as spelled out in the Sixth Amendment of the Federal Constitution. . . ." *Id.* at 721. After considering the defendant's case, the district court was "of the opinion that the accused has not been afforded a speedy trial, and that extradition should be denied on that ground, whether the failure to act be said to fall within the exemp-

---

**1.** The parties properly agree that the 1931 Extradition Treaty between the United States and the United Kingdom remains in force between the United States and the Commonwealth of The Bahamas. *In re Extradition of Tuttle,* 966 F.2d 1316, 1317 (9th Cir.1992); *United States v. Bowe,* 1990 App.Cas. 500, 525–27 (P.C.1989) (appeal taken from Bah.); *see also* Office of the Legal Advisor, U.S. Dep't of State, *Treaties in Force* 13 (1993). The United States has signed and ratified a new extradition treaty with The Bahamas, *see* Extradition Treaty, Mar. 9, 1990, U.S.–Bah., S. Treaty Doc. No. 17, 102d Cong., 1st Sess. (1991) (the "1990 Extradition Treaty"), but the new treaty has not yet entered into force. *See Recent Actions Regarding Treaties to which the United States is a Party,* 31 I.L.M. 1598 & n. 6 (1992); 1990 Extradition Treaty, art. 20(1)–(2), S. Treaty Doc. No. 17, at 19. In any event, the

new treaty provides that the 1931 Extradition Treaty applies to any extradition proceedings pending when the new treaty enters into force. 1990 Extradition Treaty, art. 20(4), S. Treaty Doc. No. 17, at 20; *see also* S.Exec.Rep. No. 29, 102d Cong., 2d Sess. 13 (1992).

**2.** The 1931 Extradition Treaty remains in the force between the United States and the following 30 countries: The Bahamas, Barbados, Burma (Myanmar), Cyprus, Fiji, The Gambia, Ghana, Grenada, Guyana, India, Jamaica, Kenya, Lesotho, Malawi, Malaysia, Malta, Mauritius, Nauru, Nigeria, Pakistan, Papua New Guinea, Seychelles, Sierra Leone, Singapore, Sri Lanka, Swaziland, Tanzania, Tonga, Trinidad and Tobago, and Zambia. *See* 18 U.S.C.A. § 3181 note (West Supp.1994) (Treaties of Extradition).

tion due to 'lapse of time,' or whether due to 'other lawful cause.'" *Id.*

Last year in *Martin,* however, we expressly disapproved of *Mylonas.* 993 F.2d at 829 n. 8. Yapp submits that we misread *Mylonas* to be holding that the Sixth Amendment's guarantee of a speedy trial applied in international extradition cases as a matter of constitutional law. In fact, says Yapp, the district court in *Mylonas* was interpreting the treaty language to import the speedy trial guarantee and make it applicable by agreement of the parties. Whether the holding in *Mylonas* is construed as interpretation of the Constitution or interpretation of a treaty, we do not find it persuasive.

The Ninth Circuit addressed an argument analogous to Yapp's in *Kamrin v. United States,* 725 F.2d 1225 (9th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). In *Kamrin,* a provision in the United States extradition treaty with Australia granted extradition defendants "the right to use such remedies and recourses as are provided by [the law of the requested State]." Treaty on Extradition, May 14, 1974, U.S.-Austl., art. X, 27 U.S.T. 957, 966. The defendant argued that this provision entitled him to a Fifth Amendment Due Process right to a trial unimpaired by the passage of time. *Id.* at 1227–28. The court rejected the defendant's claim, holding that due process rights could not be extended extraterritorially and that the treaty only required "application of the requesting state's statute of limitations." *Id.* at 1228. The court later rejected a similar argument under the "remedies and recourses" provision of the United States extradition treaty with Argentina, Treaty on Extradition, Jan. 21, 1972, U.S.-Arg., art. 10, 23 U.S.T. 3501, 3511, holding that where extradition was not barred by the statute of limitations, the "remedies and recourses" provision did not entitle a defendant to additional constitutional protections. *In re Extradition of Kraiselburd,* 786 F.2d 1395, 1398 (9th Cir.), *cert. denied,* 479 U.S. 990, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986).

Yapp's argument is seemingly better than those presented in *Kamrin* and *Kraiselburd,* however, because it relies on Article 5's reference to a lapse of time after "institution of the penal prosecution." Such language would at least appear amenable to the interpretation Yapp suggests. However, "in United States tradition the primary object of interpretation is to 'ascertain the meaning intended by the parties'; 'the ordinary meaning of the words of the agreement' is a factor to be taken into account, as are the preparatory materials." Restatement (Third) of Foreign Relations Law of the United States § 325 reporter's note 4 (1986) (quoting Restatement (Second) of Foreign Relations Law of the United States §§ 146, 147 (1965)).

Weighing heavily against Yapp's position is the fact that for over a century, the term "lapse of time" has been commonly associated with a statute of limitations violation. *See, e.g.,* Restatement (Third) § 476 cmt. e; I John B. Moore, *A Treatise on Extradition and Interstate Rendition* § 373 (1891). The text of the latest Restatement refers to the expiration of "the applicable period of limitation" as a ground for refusing extradition; nowhere does it mention the defendant's right to a speedy trial. Restatement (Third) § 476(1)(d). The preratification materials accompanying the 1990 Extradition Treaty with The Bahamas likewise make explicit that the term "lapse of time" in the new treaty refers to the applicable statute of limitations, with no indication that this interpretation represents a change from the 1931 Extradition Treaty. S. Treaty Doc. No. 17, at VII ("Article 6 mandates the denial of extradition if prosecution is barred by the statute of limitation of the Requesting State...."); S.Exec.Rep. No. 29, at 7 ("This article requires that the requested state deny extradition if the requesting State's statute of limitation bars the prosecution of the offense in question.").[3]

Moreover, interpreting a lapse of time "subsequently to ... the institution of the

---

**3.** Had the 1990 Extradition Treaty been in force when The Bahamas requested Yapp's extradition, it appears that it would have foreclosed the argument Yapp makes here. The new treaty bars extradition only "when all prosecution has be-

come barred by lapse of time according to the laws in the *Requesting* State." 1990 Extradition Treaty, art. 6, S.Treaty Doc. No. 17, at 6 (emphasis added).

penal prosecution" to invoke the right to a speedy trial would ultimately conflict with the rule of non-inquiry in international extradition cases. As we noted in *Martin*, the rule of non-inquiry "precludes extradition magistrates from assessing the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request." 993 F.2d at 829. Determining whether a statute of limitations has run requires a mathematical calculation that can usually be performed simply by referring to the applicable statutory provision. A speedy trial inquiry would require a district judge or magistrate judge, generally unfamiliar with foreign judicial systems and the problems and circumstances facing them, to assess the reasonableness of a foreign government's actions in an informational vacuum. We do not think the parties who negotiated the 1931 Extradition Treaty would have intended to abrogate the rule of non-inquiry without stating their intention to do so more explicitly.

We agree with the district court that Article 5's reference to a lapse of time after "the institution of the penal prosecution" is meant simply to clarify that a statute of limitations can run, in certain circumstances, even after criminal proceedings have begun. As the district court noted, civil law countries often have statutes of limitations applying to the time in which a person must begin serving his sentence. *See* 4 Michael Abbell & Bruno A. Ristau, *International Judicial Assistance* § 13–2–4(18), at 95 n. 3 (1990). Including such a provision in a treaty between two common law countries might seem unusual, but under United States law an arrest, which could qualify as "the institution of the penal prosecution" for the purposes of Article 5, does not toll the statute of limitations. *In re*

*Extradition of Assarsson*, 687 F.2d 1157, 1161 n. 8 (8th Cir.1982); *Powell v. United States*, 352 F.2d 705, 707 n. 5 (D.C.Cir.1965). Likewise, a statute of limitations is not tolled by an indictment that is dismissed for failure to prosecute. *United States v. Peloquin*, 810 F.2d 911, 912–13 (9th Cir.1987); *United States v. DiStefano*, 347 F.Supp. 442, 444–45 (S.D.N.Y.1972).

Thus, we hold that the "lapse of time" provision in Article 5 of the 1931 Extradition Treaty refers to the running of a statute of limitations and not to a defendant's Sixth Amendment right to a speedy trial. Having so held, we need not decide whether the actions of the Bahamian authorities violated Yapp's right to a speedy trial under the test established in *Barker v. Wingo*.[4] We note, however, that Yapp may address her argument on this point to the Secretary of State, who exercises much broader discretion in international extradition cases than do the federal courts. *See Martin*, 993 F.2d at 829. Additionally, the courts of The Bahamas might afford Yapp another forum for presenting a similar argument under the Bahamian constitution.[5]

*Conclusion*

For the reasons stated, the judgment of the district court is AFFIRMED.

CARNES, Circuit Judge, dissenting:

The majority opinion, in the course of interpreting the treaty language at issue, has improved it. I describe the majority's modification of the 1931 Extradition Treaty as an "improvement" because the contracting states obviously view it as such. That much is clear from their recent negotiation and

---

**4.** We need not address the declaration submitted after oral argument by the Department of State. Declaration of Robert K. Harris, U.S. Dep't of State Decl. No. 9408327–1 (May 17, 1994). The Declaration purports to represent the Department's legal interpretation of Article 5 of the 1931 Extradition Treaty. While the Declaration supports our holding, it was not presented to the district court below and is not a part of the Record in this case. We question whether such a Declaration constitutes "supplemental authority" which may be submitted at such a late date pursuant to Fed.R.App.P. 28(j).

**5.** The Constitution of the Commonwealth of The Bahamas provides criminal defendants with a right to "a fair hearing within a reasonable time." Bah. Const. ch. III, § 20. The Privy Council has interpreted identical language in the Jamaican constitution to require an analysis of the criteria articulated in *Barker v. Wingo*. *See Bell v. Director of Pub. Prosecutions*, 1985 App. Cas. 937, 951–53 (P.C.) (appeal taken from Jam.) (acknowledging the desirability of applying the *Barker v. Wingo* criteria "to any constitution, written or unwritten, which protects an accused from oppression by delay in criminal proceedings").

adoption of a new extradition treaty, not retroactively applicable to this case, which incorporates textual revisions similar in result to those that the majority opinion effects through its interpretation of the original treaty. Contracting states are free to alter or amend treaty language in any way they see fit. Courts are not. For that reason, I dissent.

## I. THE TREATY'S TEXT

Article 5 of the 1931 Extradition Treaty provides:

> The extradition shall not take place *if, subsequently to* the commission of the crime or offence or *the institution of the penal prosecution* or the conviction thereon, *exemption from prosecution or punishment has been acquired by lapse of time,* according to the laws of the High Contracting Party applying or applied to.

Treaty on Extradition, Dec. 22, 1931, U.S.–U.K., art. 5, 47 Stat. 2122 ("1931 Extradition Treaty") (emphasis added). On its face, Article 5 prohibits extradition where, under United States or Bahamian law, "exemption from prosecution or punishment has been acquired by lapse of time" subsequent to: (1) "the commission of the crime or offence"; *or* (2) "the institution of the penal prosecution"; *or* (3) "the conviction thereon." The Speedy Trial Clause of the United States Constitution is a "law" of the United States that, in some circumstances, bars prosecution due to "lapse of time" after "the institution of the penal prosecution." *See, e.g., Doggett v. United States,* —— U.S. ——, ——, 112 S.Ct. 2686, 2689, 120 L.Ed.2d 520 (1992). Thus, the *text* of the Treaty, if given its natural meaning, would incorporate the Constitution's speedy trial protections.

"In construing a treaty, as in construing a statute, we first look to its terms to determine its meaning." *United States v. Alvarez–Machain,* —— U.S. ——, ——, 112 S.Ct. 2188, 2193, 119 L.Ed.2d 441 (1992). When a particular treaty provision is ambiguous or difficult, "we may look beyond the written words" to consider the history of negotiation and other evidence of the parties' intent. *Eastern Airlines v. Floyd,* 499 U.S. 530, 534–35, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991) (internal quote marks omitted). However, "it is particularly inappropriate for a court to sanction a deviation from the clear import of a solemn treaty between this Nation and a foreign sovereign, when … there is no indication that application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Maximov v. United States,* 373 U.S. 49, 54, 83 S.Ct. 1054, 1057, 10 L.Ed.2d 184 (1963); *see also* Restatement (Third) of Foreign Relations Law § 325(1) (1986) ("An international agreement is to be interpreted in good faith in accordance with the *ordinary meaning* to be given to its terms in their context and in light of its object and purpose." (Emphasis added.)).

The majority says that the phrase "lapse of time" has, in other extradition treaties, been "commonly associated with a statute of limitations violation." Maj. op. at 1567. That is true. But we are not interpreting the phrase "lapse of time." We are interpreting the phrase "lapse of time" *as modified by* the phrase "subsequently … to the institution of the penal prosecution." The majority points to no case, treatise, or authority of any kind that "associates" *this* distinctive language with, much less restricts it to, statutes of limitation.

Article 5's distinctive language—"subsequently to … the institution of the penal prosecution"—presumably was included *for a reason.* Treaties, like statutes, should be construed so that no words are treated as being meaningless, redundant, or mere surplusage. *E.g., Itel Containers Int'l v. Huddleston,* —— U.S. ——, ——, 113 S.Ct. 1095, 1100, 122 L.Ed.2d 421 (1993) (refusing to read an international convention in a way that would make some of its language superfluous); *Foster v. Neilson,* 27 U.S. (2 Pet.) 253, 310–11, 7 L.Ed. 415 (1829) (Marshall, C.J.) ("But the insertion of these words materially affects the construction of the article. They cannot be rejected as surplusage. They have a plain meaning.... We cannot say they were inserted carelessly or unadvisedly, and must understand them according to their obvious import."); *Cross v. Washington,* 911 F.2d 341, 344 (9th Cir.1990) (noting

that treaties should not be construed so as to render any clause inconsistent or meaningless), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1313, 113 L.Ed.2d 247 (1991); *cf. United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) ("The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section, as the Government's interpretation requires." (Citations and internal quote marks omitted.)).

The district court suggested that Article 5's specific reference to lapses of time that occur after the institution of the penal prosecution was added to clarify that Article 5 incorporates civil law countries' statutes of limitation, which unlike the statutes of limitation of common law countries such as the United States and the United Kingdom, restrict the time in which a person must begin serving his sentence. The district court's hypothesis is unpersuasive. The 1931 Extradition Treaty was adopted by two common law countries, the United States and the United Kingdom. *See* 1931 Extradition Treaty. When The Bahamas gained its independence from the United Kingdom, the Treaty was continued in force by an exchange of notes between the United States and The Bahamas. *See* Agreement for the Continued Application to the Bahamas of the United States–United Kingdom Treaty of December 22, 1931, Mar. 7–Aug. 17, 1978, U.S.–Bah., T.I.A.S. No. 9185. Civil law statutes of limitation exist in neither the United States nor the United Kingdom, so such statutes cannot explain why those two nations negotiated a treaty that makes specific reference to lapses of time that occur after the institution of penal proceedings.

Recognizing this weakness in the district court's analysis, the majority offers its own theory. According to the majority opinion,

Article 5's reference to lapses of time that occur after "the institution of the penal prosecution" was added to clarify that a statute of limitation may continue to run after arrest or after the dismissal of an indictment for failure to prosecute. Maj. op. at 1568. The majority therefore concludes that Article 5's lapse of time provisions—all three of them—refer to various applications of statutes of limitation.

However, if Article 5 had been intended to refer only to statutes of limitation, it would have been at least eleven words shorter. It would have read:

> The extradition shall not take place if, subsequently to the commission of the crime or offence, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.

Such a truncated version of Article 5 would have covered every possible statute of limitation scenario, including the two posited by the majority. A statute of limitation that applies after arrest or after dismissal of an indictment for failure to prosecute certainly accords "exemption from prosecution or punishment" due to "lapse of time" "subsequently to the commission of the crime or offence." Thus, contrary to the majority's suggestion, the drafters of Article 5 did not need to specifically "clarify that a statute of limitations can run, in certain circumstances, even after criminal proceedings have begun." Maj. op. at 1568. That would have been clear under a version of Article 5 that did not incorporate exemptions from "prosecution or punishment" acquired after "the institution of the penal prosecution." [1]

However, the actual treaty is not so short. Article 5 refers to lapses of time that occur after commission of the crime, *and* lapses of time that occur after the institution of penal proceedings, *and* lapses of time that occur

---

1. The 1990 Extradition Treaty between the United States and The Bahamas is even shorter than the "short" version I have set out in the text, but it accomplishes the same purpose. The 1990 Treaty contains no reference to lapses of time that occur after the institution of penal prosecution or after conviction. In addition, the new treaty's lapse of time provision incorporates only

the protections of the nation seeking extradition. The new treaty provides: "Extradition shall not be granted when all prosecution has become barred by lapse of time according to the laws in the Requesting State." *See* Extradition Treaty, Mar. 9, 1990, U.S.–Bah., art. 6, S.Treaty Doc. No. 17, 102d Cong., 1st Sess. (1991).

after conviction. The Treaty explicitly and clearly incorporates three different types of lapse of time provisions: one type, commonly referred to as "statutes of limitation," that applies after commission of the crime but before institution of penal proceedings; a second type, such as Speedy Trial Clause protections, that applies only after the institution of penal proceedings; and a third type that applies after conviction.

The majority's interpretation of Article 5 not only fails to explain the particular language at issue in this case—the reference to exemptions from prosecution acquired after "institution of the penal prosecution"—it also ignores Article 5's reference to time lapses that occur "subsequently to ... conviction." The majority insists that Article 5 refers only to statutes of limitation, but neither the United States nor the United Kingdom (nor The Bahamas) applies statutes of limitation to post-conviction delay. Although we need not decide what this language means, it must mean *something*, and that something is clearly not statutes of limitation.[2] The words of Article 5 are not only broad enough to include non-statutory limitation periods, they are too broad not to include them.

## II. EXTRINSIC SOURCES

The majority opinion relies upon extrinsic sources to justify its interpretation of the Treaty. However, none of the extrinsic sources to which the majority opinion turns suggest that the 1931 Extradition Treaty—the only treaty applicable in this case—incorporates only statutory limitation periods.

The majority first points to a Ninth Circuit case that interpreted a wholly different extradition treaty, *Kamrin v. United States*, 725 F.2d 1225 (9th Cir.), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 85 L.Ed.2d 32 (1984).

The U.S.–Australian extradition treaty at issue in *Kamrin* contained no reference to lapses of time after "the institution of the penal prosecution," so it is unsurprising that the *Kamrin* court never considered the question of whether that treaty incorporated Speedy Trial Clause protections. In that case, Australia sought extradition from the United States of a U.S. citizen accused of crimes in Australia. The relevant treaty language prohibited extradition "'when the prosecution for the offense has become barred by lapse of time according to the laws of the *requesting* state.'" *Id.* at 1227 (emphasis added in original) (quoting the U.S.–Australian extradition treaty). The *Kamrin* court held that, on its face, the treaty did not purport to apply the statute of limitation of the *requested* state, so the American limitation period was inapplicable. *Id.* Citing a treaty clause that provided that the defendant "'shall have the right to use such remedies and recourses as are provided by'" the state from which extradition was requested, Kamrin also argued that the U.S.–Australian extradition treaty incorporated United States due process rights to a timely trial. *Id.* (quoting the U.S.–Australian extradition treaty). The Ninth Circuit refused to read that vague and general "remedies and recourses" language as incorporating United States due process protections. *Id.* at 1228. The *Kamrin* court's interpretation of the U.S.–Australian extradition treaty is inapposite to our analysis of the different and far more specific guarantees of the 1931 U.S.–Bahamian Treaty. As the majority itself admits, Maj. op. at 1566, the meaning of Article 5 of the 1931 Extradition Treaty is a question of first impression in this country. *Kamrin* did not decide it.

The majority opinion next seeks support in the Restatement (Third) of Foreign Rela-

---

**2.** This post-conviction language may refer to the British doctrine of "abuse of process," a doctrine similar in some ways to our Speedy Trial Clause. *See Regina v. Governor of Pentonville Prison ex parte Sinclair*, 2 App.Cas. 64, 2 All E.R. 366 (H.L.1991) (suggesting that Article 5 of the 1931 Extradition Treaty incorporates the British "abuse of process" doctrine, which could bar a signatory from waiting 15 years to extradite a person convicted in absentia). *See generally Denby v. Seaboard World Airlines*, 737 F.2d 172, 176 n. 5 (2d Cir.1984) (noting that "respect" is "always due to a decision of the House of Lords"). Of course, if the Treaty's reference to post-conviction delay was intended to refer to the "abuse of process" doctrine, that fact would not also explain the Treaty's separate reference to lapses of time occurring after the institution of the penal prosecution, a reference I believe can only refer to lapses of time governed by the Speedy Trial Clause.

tions Law, noting that the Restatement's discussion of extradition treaties makes no reference to Speedy Trial Clause protections. Of course, the Restatement also makes no reference to the particular treaty that we are charged with interpreting, or to any other extradition treaty that contains similar language. What the Restatement says is that, "[u]nder most international agreements ...: (1) A person sought for prosecution or for enforcement of a sentence will not be extradited ... (d) if the applicable period of limitation has expired." Restatement (Third) of Foreign Relations Law § 476 (1986). Given that no reported decision has interpreted treaty language similar to that of Article 5, I am not persuaded that this treaty language is typical of "most international agreements." Indeed, the Restatement's commentary makes clear that it is not discussing the provision we have before us. It says:

> For purposes of applying statutes of limitation to requests for extradition in accordance with Subsection (1)(d), the [limitations] period is generally calculated from the time of the alleged commission of the offense to the time of the warrant, arrest, indictment, or similar step in the requesting state....

*Id.*, cmt. e. The 1931 Extradition Treaty, by contrast, calls for calculation of three different applicable periods: the period after commission of the offense, the period after institution of penal proceedings, and the period after conviction. Thus, the Treaty at issue in this case envisions something different—something more—than the run-of-the-mill treaty language discussed in the Restatement. The majority's theory does not account for the differences in the three periods specified in this Treaty.

The majority opinion also claims to find support for its position in the pre-ratification materials accompanying the newly-negotiated 1990 Extradition Treaty between the United States and The Bahamas. Such materials are not probative of the intentions of the drafters of a 1931 treaty, and the 1990 materials do not even purport to reflect such intentions. Instead of supporting the majority's theory about the 1931 treaty, the 1990 treaty actions actually contradict that theory.

The new treaty provides only that "[e]xtradition shall not be granted when all prosecution has become barred by lapse of time according to the laws in the Requesting State." *See* Extradition Treaty, Mar. 9, 1990, U.S.–Bah., art. 6, S.Treaty Doc. No. 17, 102d Cong., 1st Sess. (1991). Thus, in negotiating and drafting the new treaty, the contracting states deleted any reference to post-prosecution and post-conviction lapses of time. This modification is consistent with the contracting states' intent to incorporate only statutory limitations periods in the new treaty, an intent expressed in pre-ratification materials relating to the new treaty. This modification also bears directly on the meaning of the language found in the 1931 treaty. If the prior language simply meant "statutes of limitation," as the majority opinion contends, then the drafters of the new treaty would have had no reason to delete that prior language. Yet the prior language was deleted, probably to insure that the new treaty's lapse of time clause would incorporate only statutes of limitation. Such a change is within the power of the contracting parties, but it is not within the prerogatives of this Court. We must apply the relevant 1931 Extradition Treaty language as it was actually written, before the non-retroactive change was made in the 1990 treaty.

The majority opinion finally claims that its interpretation of the 1931 Treaty is necessary to avoid conflict with the "rule of non-inquiry." Maj. op. at 1567. That rule originated in *Neely v. Henkel*, 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448 (1901), which stated:

> When an American citizen commits a crime in a foreign country he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people, *unless a different mode be provided for by treaty stipulations between that country and the United States.*

*Id.* at 123, 21 S.Ct. at 307 (emphasis added). The majority opinion ignores the italicized language—language that poses, rather than answers, the question of whether the 1931 Extradition Treaty provides for Speedy Trial Clause protections. The non-inquiry doctrine's rationale is that United States citizens

who commit crimes abroad should not be able unilaterally to impose American procedural protections on foreign sovereigns. *See, e.g., In re Burt,* 737 F.2d 1477, 1485 n. 11 (7th Cir.1984). However, that rationale does not address Yapp's contention that The Bahamas *voluntarily* agreed, through the 1931 Extradition Treaty, to provide speedy trials to persons whom it wished to extradite from the United States. The Supreme Court, in *Neely,* specifically acknowledged that a treaty may obligate a foreign sovereign to accord American procedural protections to persons extradited from this nation. The majority opinion recognizes as much, for it concedes that the Treaty applies United States statutes of limitation against The Bahamas in extradition cases. Of course, a nation that has voluntarily submitted to application of United States statutory requirements may likewise agree to follow United States constitutional requirements. The Bahamas did precisely that in the Treaty at issue here.[3]

### III. CONCLUSION

I would apply Article 5 of the 1931 Treaty as it was written, giving effect to each of its clauses. Because Article 5 incorporates Speedy Trial Clause protections, I would reverse the district court's contrary holding and remand the case in order for that court to determine whether Yapp's speedy trial rights were violated in this case.

---

**3.** As the majority opinion notes, the U.S. Department of State has submitted a declaration stating that the Department interprets Article 5 of the 1931 Extradition Treaty to incorporate only statutes of limitation. The majority has chosen not to consider the Department's untimely submission. However, even if we were to consider that submission, I would find it unpersuasive. The Department's declaration completely ignores the 1931 Extradition Treaty's specific and unusual reference to lapses of time that occur after the

institution of penal proceedings and after conviction. Instead, and without any reasoning specific to the treaty language at issue here, the Department contends that the Treaty's extradition bar incorporates only statutes of limitation. We should not "read [a treaty's] language ... as encompassing, much less compelling, so significant a deviation from normal word use." *Maximov v. United States,* 373 U.S. 49, 52, 83 S.Ct. 1054, 1056, 10 L.Ed.2d 184 (1963).